GEORGE T. HUTCHINGS *vs.* JOHN B. REINHALTER.

WASHINGTON—JANUARY 22, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Negotiable Instruments. Procedure. Proof. Pleading and Practice. General Issue.*

In an action upon a promissory note, payable to the plaintiff or endorsed to him specially or endorsed in blank, where the defendant has pleaded the general issue and has not notified the plaintiff to prove the signature of the parties to the paper, a *prima facie* case is made out by the production of the note in court; and the defendant cannot contest the case on the ground that the plaintiff has no beneficial interest unless he can show that plaintiff's possession has been obtained by fraud upon the lawful owner.

(2) *Mortgages. Installment Notes. Appropriation of Proceeds to Payment of Notes.*

Defendant gave plaintiff six promissory notes for various sums, payable at stated times, all with interest at six per cent., secured by mortgage deed constituting plaintiff his attorney to sell the mortgaged premises in case of default in payment "of said notes or either of them," and in case of sale authorized said attorney "to receive the amount the same may be sold for and, after payment of expenses, to appropriate the residue to the payment of the amount of principal and interest of said notes." The next clause in the printed blank (hereby agreeing that in case of a sale for default in payment of said     interest the principal of said note shall be deemed due and payable on the day of such sale) was stricken out.

No payment was made on the notes. When the first three notes were due by their terms, plaintiff commenced action thereon by attachment of other property of defendant not included in the mortgage. After commencement of suit, plaintiff advertised the mortgaged premises and sold same for less than face of mortgage. Plaintiff credited this amount on the three notes not due when suit was brought. Defendant claimed that the proceeds should be applied upon the notes then due :—

*Held,* that by the terms of the mortgage the plaintiff was authorized to appropriate the proceeds of sale to the payment of a note not due by its

terms, so that, for the purposes of the mortgage, after default upon one note the others were to be treated as presently payable.

*Held*, further, that the mortgage gave the mortgagee the right of apportionment, and as there was no stipulation therein as to how the apportionment should be made, by the common-law rule generally adopted in this country the creditor could make the application as he chose, upon the principle that as between the debtor and creditor such an appropriation is most equitable as gives the creditor the benefit of his security.

ASSUMPSIT on promissory notes. Heard on petition of defendant for new trial, and petition denied.

PER CURIAM. We think the decision of Mr. Justice Douglas in this case was correct, and we adopt the same as our opinion.

Petition for new trial denied, and judgment on the decision of Mr. Justice Douglas.

## DECISION.

DOUGLAS, J. The facts in this case are not disputed. The defendant, on September 13, 1899, gave the plaintiff five promissory notes for $500 each, payable to his order in three, six, nine, twelve, and fifteen months, respectively, and one for $950 payable in two years, all with interest at the rate of six per cent., and secured the same by his mortgage deed of the same date, in which he constituted the plaintiff his attorney to sell the mortgaged premises in case default should be made in the payment of "said notes or either of them," and in case of sale authorized said attorney "to receive the amount the same may be sold for, and, after the payment of all the expenses incident to such sale or sales, to apply and appropriate the residue thereof to the payment of the amount of principal and interest of said notes hereby secured." The next clause in the printed blank (hereby agreeing that in case of a sale for default in payment of said . interest the principal of said note shall be deemed due and payable on the day of such sale) is stricken out.

No payment has been made on the notes.

This action was begun September 8, 1900, on the first three notes, which were then due by their terms, by attachment of

other property of the defendant not included in the mortgage. After the commencement of the suit the plaintiff duly advertised the mortgaged premises and sold the same January 9, 1901, for $2,050. The expenses of the sale being deducted left in his hands the sum of $1,998.95 to be applied to the notes secured.

The plaintiff also filed a bill of charges against the defendant, amounting to $105.76. The defendant filed the general issue, and an account in set-off amounting to $510.83. It is agreed that these claims are correct and that on the open accounts the plaintiff is indebted to the defendant as a balance in the sum of $405.07. It further appears that on January 12, 1901, defendant claimed that at the sale he had notified the plaintiff to apply the proceeds of the auction sale upon the four notes then due. On January 11 the plaintiff notified the defendant that he had credited the proceeds on the three notes not due by their terms when the suit was brought.

It further appears that on November 6, 1899, the plaintiff borrowed $600 of the Ashaway Bank and endorsed all the notes in question and delivered them to the bank as collateral security for the loan, but that the notes were redelivered to plaintiff's counsel before the suit was brought and retained by him until the next session of the court was over, then returned to the bank and again delivered to plaintiff's counsel to be produced at this trial. The mortgage was not assigned to the bank.

(1) Upon these facts two questions arise.

First, it is contended by the defendant that the plaintiff, by his endorsement of the notes and his dealing with the bank in respect to them, has lost his right to sue upon them. I think this contention is erroneous. In our practice, in an action upon a promissory note where the defendant has pleaded the general issue and has not notified the plaintiff to prove the signature of the parties to the paper, it is incumbent upon the plaintiff simply to produce the note in court. If it is payable to himself or endorsed to him specially or endorsed in blank, he may then rest his case. The defend-

ant cannot contest the case on the ground that the plaintiff has no beneficial interest unless he can show that the plaintiff's possession has been obtained by fraud upon the lawful owner.   Says Daniel on Negotiable Instruments, Vol. 2, § 1191: "The law is now too well settled to admit of longer controversy that an action on a bill or note payable to bearer or endorsed in blank may be maintained in the name of the nominal holder who is not the owner, by the owner's consent ; and that possession by such nominal holder is *prima facie* sufficient evidence of his right to sue and cannot be rebutted by proof that he has no beneficial interest or by anything else but proof of *mala fides.*"

The evidence submitted by the defendant in this case does not even tend to show bad faith on the part of the plaintiff in obtaining possession of the notes.   They are produced here by his counsel, endorsed in blank, and this proves his title. The evidence that the bank had some equitable claim to the proceeds or right to have other security in their place, as also the fact that they had ever been pledged, are all immaterial and impertinent, and cannot be considered upon the issue. It is for the defendant's advantage that the plaintiff should sue rather than the bank, for the defendant's account in set-off is available against the plaintiff, not against the bank, and if the bank permit the plaintiff to sue, the defendant cannot complain.   The mortgage was not assigned to the bank ; and whatever equitable title in the mortgage may have passed by the endorsement of the notes, the legal title, which this court sitting at common law must recognize, has always been in the plaintiff.

I conclude, therefore, that, for the purposes of this case, the plaintiff is the owner of the notes and the mortgage and has been such owner from the time they were given.

(2)     The second question arises from the conflicting claims of the parties as to the right of appropriation of the proceeds of the mortgage sale.   The plaintiff claims the right to appropriate these proceeds to the extinguishment of the notes as he sees fit.   The defendant contends that they must be appro-

priated proportionally upon the notes which had matured at the time of the sale.

The question is not likely to occur often in this State. The form of promissory note usually given with mortgage security provides for the payment of interest at stated periods, and the clause, erased in this mortgage, is retained and provides that on default of payment of interest when due the capital of the loan shall likewise become due immediately. In such case it can make no difference to the parties how the proceeds are applied amongst several notes all due at the same time. In the case at bar the interest was not made payable before the principal ; and it was probably for this reason that the clause was erased, as it would have been meaningless in the premises if it had been filled out and retained. The mortgage, however, does provide that in case default is made in the payment of any one of these notes and sale is made of the mortgaged property, the mortgagee, after payment of the expenses of sale, may " apply and appropriate the residue thereof to the payment of the amount of principal and interest of said notes hereby secured." This is plainly authority to appropriate the proceeds of sale to the payment of a note not due by its terms ; so that, for the purposes of the mortgage, after default upon one note the others are to be treated as presently payable. The notes were all given for the same debt, which, by the tenor of the notes, was made payable in installments. If the first one with its interest were paid at maturity, further time was given upon the others, and so on until the installment represented by some one of the notes became due and was not paid ; then the contract was that the creditor might sell the security and appropriate the proceeds to all the notes due or not due. Further time for payment, so far as the mortgage security was concerned, was forfeited ; and so the mortgagor has no equity to insist that the proceeds shall be applied upon one note rather than another.

The general principles applicable to the appropriation of payments are well settled in most of the courts of the United States, and the rule that in case of voluntary payments

the debtor may direct the application, but if he neglects to do so the creditor may choose, and that in case of involuntary payments, such as those made by compulsion of legal process, neither has an option, but the court will make such an application as the equity of the case suggests, may be said to be generally adopted; but these rules are so frequently modified in their application, by special agreements and considerations affecting particular cases, that no unanimity of precedent can be invoked to control the decision of the case at bar. After a careful examination of very many decided cases, I am of opinion that the mortgage in question gives to the mortgagee the right of apportionment. There is no stipulation in the mortgage how the appropriation shall be made; and in such case, according to the common-law rule which is most generally adopted in this country, the creditor may make the application as he chooses.

The application of the proceeds of a mortgage sale made under a power of attorney in the mortgage may be considered as a voluntary payment made, as far as the debtor is concerned, at the time the mortgage is delivered. Then the debtor may direct how the security shall be applied. If he neglects to do this at that time, he leaves the whole matter in the mortgagee's hands to manage as he pleases. Many well-reasoned cases recognize this principle. In *Gaston* v. *Barney*, 11 Ohio St. 506, certain securities had been transferred to be collected and applied to the payment of four promissory notes, and no direction was given at the time as to the mode of application. The court held that the option had passed to the creditor, and it was too late for the debtor to direct an application when the security had been turned into money, citing Chitty on Contracts, 650, and notes. Smith's Mercantile Law, 670; *Peters* v. *Anderson*, 5 Taunt. 596; *Philpot* v. *Jones*, 2 Ad. & El. 41; *Mills* v. *Fowkes*, 5 Bing. (N. C.) 455.

In *Saunders* v. *McCarthy*, 8 Allen, 42, a mortgagee was permitted to apportion the proceeds of the mortgage to the payment of the last of several installments in which the debt was payable. The court say, page 45 : ''As the whole note

was due at the date of the endorsement, the plaintiff had a right to appropriate the amount he received to either install-ment at his option. . . . It was paid by the sale of property under agreement with the defendant, in which the defendant reserved no right to make an appropriation." The same doctrine is held in *Allen* v. *Kimball*, 23 Pick. 273, where the court say : "The property was assigned as col-lateral security for all the notes. The first note was paid at maturity, but the other two were due and payable when the money in the plaintiff's hands was received. It is immaterial to the defendant to the payment of which note the money is applied unless his object be to subject the plaintiff to the liability of paying costs, an object manifestly unjust unless the action has been prematurely commenced."

To the same effect are *Mathews* v. *Switzler*, 46 Mo. 301, and *Penzel* v. *Brookmire*, 51 Ark. 105. The latter case recognizes the principle as follows : "While the notes were in the hands of the mortgagee there could be no priority of liens. He was not bound to foreclose when default was made in the payment of the note first falling due. He could have waited until all became due, and then, if the mortgage empowered him to sell when default should be made in the payment of any one of the notes, have sold the property and appropriated the proceeds of the sale, if the mortgage did not forbid, to the payment of any of the notes, if there were not more than enough for that purpose." . . .

"The mortgagee being the owner of all the notes, unre-stricted by the mortgage, can give the preference in the appropriation of the proceeds in either of them by virtue of his ownership and control over the whole mortgage debt, and the question of preference or right to priority in pay-ment out of the proceeds can only arise when there is a diversity in the ownership of the debt secured."

This principle is cited as an illustration in *Morrison* v. *Citizens National Bank*, 65 N. H. 253, where the right of an attaching creditor to apply the proceeds of an attachment regardless of the claims of a surety is compared to the right of a mortgagee to apply the proceeds of a mortgage sale.

The court says: "It is as if Dearborn had delivered the property to the bank in pledge, with express authority to sell it and apply the proceeds in satisfaction of such of their claims as they might see fit; or, as if he had given the bank a mortgage of the property to secure all their demands without stipulating for its application on any one of them in preference to another." In *Nat'l Bank of Newburgh* v. *Bigler*, 83 N. Y. 51, 63, a debtor assigned to a bank—his creditor—a judgment as security for several debts. The creditor collected the judgment and appropriated it to certain of these debts contrary to the demand of the debtor that certain other debts should be preferred. Not having directed how the money should be applied when he assigned the judgment, and having parted with his ownership without condition, the debtor was held not to be entitled to dictate what the creditor should do with money which had thus become its own. In *Northern National Bank* v. *Lewis et als.*, 78 Wis. 478, it is held that where a chattel mortgage is given to the bank to secure the payment of several notes held by it against the mortgagors, and there is no provision as to the order in which such notes are to be paid, the bank may apply the proceeds of a foreclosure sale to the payment of any of the notes in its discretion.

The case of *Nichols* v. *Knowles*, 17 Fed. Rep. 494, cited by the plaintiff, is very much in point. The case is more fully reported in 3 McCrary (U. S. Cir. Ct.), Rep. 477. This was a suit on certain promissory notes executed by the defendant to the plaintiff. The notes sued on were the first two of a series of five notes originally secured by a mortgage upon certain personal property. The mortgage contained a provision authorizing plaintiffs, upon default in the payment of any one note or of the interest, to declare the whole debt due and to proceed to foreclose the mortgage according to law. Upon default in the payment of the first note of the series the plaintiffs, availing themselves of the privilege thus granted, declared all the notes due and proceeded to foreclose the mortgage under a statute of Minnesota by advertis-

ing the sale of the mortgaged property through the sheriff of the county.

After the property was in the sheriff's hands under the chattel mortgage, defendant notified plaintiffs that they were required to apply the proceeds of sale to the payment of the notes secured in the order of their maturity.

The plaintiffs disregarded this notice, and applied the proceeds to the liquidation of the two notes last due. The notes first due were further secured by the endorsement of a third party. The defence was that the proceeds of the sale of the mortgaged property should have been applied to the liquidation of the notes first due, and should now be so applied.

The court (McCrary, circuit judge,) says: "Inasmuch, however, as the mortgage does not direct how the proceeds of the sale of the mortgaged property shall be applied, and since there are no circumstances from which it can be inferred that a *pro rata* application was intended by the parties, I hold that the creditor had a right to apply the proceeds to the payment of any of the debts secured by the mortgage."

In this case Judge McCrary says that the circumstance that some of the notes were endorsed by a third party strengthens his conclusion, as it may be inferred that the parties intended to have the proceeds of the sale applied so as to give the creditor the full benefit of all his security. And this leads to the consideration of another principle applicable to this case at bar, upon which there is conflict of authority, but which seems to me to be sustained by reason and justice. It is that, as between the debtor and creditor at least, such an appropriation of payments is most equitable as gives the creditor the benefit of his security. This rule, of course, is directly applicable only where no binding agreement on the subject has been made by the parties, as in cases of compulsory payment where the court is called upon to decide how payments ought to be applied, but it may fortify our interpretation of the intention of the parties expressed in their written agreement in this case. The object of giving security is to

insure the payment of the debt, not the accommodation of the debtor. If the whole security becomes exhausted in the process of liquidation, the creditor gets no more than the parties contemplated when the debt was incurred. The plaintiff in this case, at the time of the mortgage sale, had additional security by attachment for the three notes which were first due. It is to enforce this security that he prosecutes this suit, and if he must apply the proceeds of the mortgage upon these notes he will lose the benefit of his attachment and so a portion of his debt. If he had delayed his sale, as he might have done, until the last note became due by its terms, the principal and accruing interest might have wiped out the whole security and left the plaintiff unsatisfied and the defendant owing a larger balance. His right to sue and attach for the notes already due was incontestable, and so was his right to sell under the mortgage and apply the proceeds to the whole debt evidenced by all the notes secured. See also *Sturgeon Savings Bank* v. *Riggs*, 72 Mo. App. 239 ; *Matthews* v. *Switzler*, 46 Mo. 301 ; *Small* v. *Olber*, 51 Ia. 326 ; *California Bank* v. *Ginty*, 108 Cal. 148 ; *Hanson* v. *Manley*, 72 Ia. 48.

There are many cases to the contrary, following the civil-law rule which gives the preference in application to the most onerous debt ; but, as already remarked, the rule of the cases cited seems to me most equitable.

My decision, therefore, is that, as matter of law, the plaintiff had the right to credit the net proceeds of the mortgage sale upon the last note of the series.

The defendant's open account must be considered as a voluntary payment made with direction to appropriate it upon the notes and account sued upon. This is clearly the legal effect of the plea in set-off. While the last four notes were payable by agreement of the parties out of the proceeds of the mortgage, their tenor for other purposes was not changed, and suit can only be brought upon them according to their tenor.

Decision for the plaintiff for the amount of the notes in

suit, with interest, less the balance of account due to the defendant.