Argued at Pendleton October 31; reversed December 19, 1944;
rehearing denied January 16, 1945

# CASPAR *v.* PARKER
(154 P. (2d) 554)

Before BAILEY, Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*S. H. Burleigh*, of La Grande (Dixon & Burleigh, of La Grande, on the brief), for appellant.

*E. M. Sabin*, of Union (Carl G. Helm, of La Grande, on the brief), for respondent.

BRAND, J.

This is an action by Sarah K. Caspar against Viola Parker to recover the balance alleged to be due on a promissory note signed by the defendant, and payable to the order of the plaintiff. From a judgment for the defendant, plaintiff appeals.

The complaint is in the usual form. It alleges the execution of the note for $4,000 by the defendant on August 20, 1936; acknowledges payment in the amount of $929.87 as itemized in a bill of particulars; and seeks judgment for the balance with interest and attorney's fees.

By her answer the defendant admits signing the note, but denies that she delivered or authorized de-

livery thereof, and denies that she paid or authorized any payments thereon. She pleads want of consideration. As a separate answer, the defendant alleges that L. Z. Terrall had for the past ten or twelve years been her attorney and confidential adviser in whom she had reposed confidence and who had been entrusted with all of her financial affairs; that she is of the age of seventy-six years, lives alone without children or relatives, and is without business experience. She alleges that prior to and on August 20, 1936, the date of the signing of the note, L. Z. Terrall was also the attorney and legal adviser for the plaintiff herein and acted as such in securing from defendant the note in suit, and alleges further that defendant was not advised and did not know that he was acting for the plaintiff in securing said note. The further answer contains a lengthy narrative concerning a series of transactions relative to the estate of Esther E. Pursel, deceased, to relevant portions of which reference will later be made. The substance of her affirmative answer is that the note was obtained by fraud. The only alleged fraudulent representation is to the effect that the plaintiff, through her agent, Terrall, represented to the defendant that she was liable upon some previous indebtedness of the estate for money borrowed from the plaintiff. The answer alleges that Terrall, while he was acting for the plaintiff, fraudulently represented to the defendant "that she had to sign the note in controversy; that she was liable therefor." She alleges that the representation was false, known to be false, made for the purpose of deceiving the defendant and that she relied thereon and signed the note.

The reply denies that Terrall was the plaintiff's agent, denies the allegations of fraud and continues

with a narrative of the proceedings in the Pursel estate to which we will refer later.

Pursuant to stipulation, the action was tried by the court without a jury. Thereafter, the court made findings of fact, the important portions of which will be noticed in the course of the opinion.

BRAND, J.

■ The trial court in a finding amply supported by the pleadings and evidence, found that the note was executed and delivered to the plaintiff by the defend-. ant. The plaintiff is, therefore, prima facie entitled to recover the balance due thereon, unless barred by some affirmative defense set up in the answer.

The maker of the note relies upon the defenses of no consideration, duress, and fraud. The trial court found that there was no duress and that, had the facts been as represented to the defendant, there would have been adequate consideration, both of which findings are amply supported by the evidence. The only defense of which we are required to take notice is that of fraud. There is not the slightest intimation in the record of any personal misconduct by the plaintiff. The defendant's claim is that she is responsible for the fraud of her agent, Terrall. A brief review of portions of the pleadings, evidence, and findings, is necessary to make clear the character of the representations which were made by Terrall and which the defendant now claims to have been fraudulent.

In the year 1929, Esther E. Pursel died testate and on June 28, 1929, her will was admitted to probate. Terrall and Davis were appointed and qualified as executors. The estate was inventoried at more than $48,000 and was more than sufficient to pay all debts,

costs of administration and specific legacies. Under the terms of the will there was a specific legacy of $10,000 to the defendant and there were legacies amounting to $11,000 to other persons. $2,000 of the latter amount was bequeathed to Jeanette Moran. Certain other real and personal property was left by the testatrix to the defendant. The residuum of the estate, both real and personal, was left to the defendant and Jeanette Moran—one-half to each. Among the assets of the Pursel estate was a block of stock, $10,000 par value, in the Union Hotel Company, a corporation, which was operating a hotel at Union, Oregon, and which corporation was, at the time of the decease of Mrs. Pursel, insolvent. The Pursels had advanced to the hotel company sums of money approximating $50,000 in an effort to maintain it as a going concern. Shortly after the death of Mrs. Pursel in 1929, the question arose as to the policy to be pursued by the executors relative to the hotel.

Terrall was not only an executor of the Pursel estate, but he had also been the confidential adviser of the defendant for many years. There is persuasive evidence, much of it undenied, from witnesses Terrall, Davis, and Moran, to the effect that the whole question concerning the future operation of the hotel was fully discussed between them and that it was agreed that money should be advanced by the executors to keep the hotel in operation in the hope that it could be sold as a going concern thereby salvaging something from what would otherwise be a total loss. It is true that the defendant, Parker, testified that she knew nothing about the hotel transaction until the day of the trial and, in fact, that she was never consulted "as to what should be done in the estate and never

knowingly agreed to pay the debts of the estate.'' However, she also testified:

"Q. And at that time didn't you discuss the question of whether or not the hotel should be closed or whether you should try to keep it going and see if you couldn't sell it?

"A. I guess we did, but not with my money."

She also testified as follows:

"Q. Where did you think the money—you said you consented to the hotel being run and that it should be kept open, but not take any of your money into it—where did you think the money was coming from?

"A. I thought there was money left in the estate to run it.

"Q. You knew notes wouldn't run it, didn't you?

"A. Well, I thought there was other money left."

■ The answer alleges, and the evidence shows, that Terrall was "on the 20th day of August, 1936, and prior thereto" the agent and confidential adviser of the plaintiff, but this is not the equivalent of an allegation that he was the plaintiff's agent in 1929 when the executors and beneficiaries were first considering their future policy regarding the hotel. We find no evidence tending to connect the plaintiff directly or indirectly with the original decision of the executors to operate the hotel. Pursuant to that decision, the hotel was kept open by the executors and money was borrowed for that purpose from the bank at Union, Oregon. The estate had been in process of administration for several years before the plaintiff became involved in the affairs of the estate or of the defendant. In 1933 or 1934 the plaintiff loaned $4,000 to the Pursel estate, taking the promissory note of the executors therefor. Upon the execution of the note to the plaintiff, she placed it in the hands of

Terrall as her attorney and adviser and authorized him to exercise his best judgment in representing her interests. The executors had increased the obligation of the estate to the bank until it exceeded $5,000. Concerning the additional sum borrowed from the plaintiff, the trial court made the following finding which is amply supported by the evidence and which we accept as conclusive:

"This $4,000.00 so borrowed by these executors was by them with the knowledge and consent of the defendant, Viola Parker, and a Mrs. Moran, who were the residuary legatees and devisees named in the Last Will and Testament of the said Esther E. Pursel, deceased, advanced to the Union Hotel Company, a corporation, in which the estate of Esther E. Pursel held stock of the par value of $10,000.00, for the purpose of enabling such Hotel Company to continue operating a hotel at Union, Oregon."

In view of this finding it is clear that there was no fraud perpetrated upon the defendant by the plaintiff or by anyone in her behalf in connection with her original loan to the estate, nor is there any allegation of fraud in that connection. The evidence shows, and the trial court found, that $9,000 (the approximate amount of the borrowings) was advanced by the executors to the hotel company with the knowledge and consent of the defendant. The hotel was ultimately sold for taxes and the venture of the executors resulted in total loss. It is true, as contended by the defendant, that but for the expenditures for the hotel it would have been unnecessary for the estate to borrow money. The defendant contends that it was illegal for the executors, without an order of court, to borrow money for the purpose of operating an insolvent hotel in which the estate was merely a stockholder. We have no occasion to decide whether the executors had au-

thority so to act. The procedure was undoubtedly irregular, but in view of the charges of bad faith, it is only fair to say that the will purported to give unusually wide powers to the executors and that all creditors and legatees of the estate were paid in full except Mrs. Parker and Mrs. Moran who knew of and consented to the use of the money as stated in the findings of the trial court. Since the Pursels had already sunk $50,000 in the hotel project, it is at least arguable that the executors may have acted in good faith in advancing further sums in an effort to salvage something from the wreck. Furthermore, the estate received $4,000 in cash from the plaintiff and the defendant's answer alleges, "That said note given the plaintiff became and was a debt and obligation of the Pursel estate * * *." Assuming that the use of the funds for the operation of the hotel was illegal, the validity of the plaintiff's claim against the estate was not affected thereby in view of the record in this case.

In addition to the $9,000 lost in the hotel project, other cash funds were exhausted by the payment in full of all specific legacies except that of the defendant. In April, 1935, upon insistence of the sureties on the executors' bond, a final account was filed which was sworn to by the executors, Terrall and Davis, showing a cash balance on hand of $524.17. Portions of this account were deliberately false. Among other misrepresentations, it failed to show that any money had been put into the hotel by the executors and it represented that the defendant's specific bequest of $10,000 had been paid in full when, in fact, only $5,000 had been then paid thereon. It purported, though falsely, to account for all receipts and expenditures. The excuse offered for this inexcusable act was that the

bonding company demanded that the estate be closed without showing. what was thought to have been a misapplication of estate funds in the hotel project.

There is persuasive testimony, most of which is undenied, that the executors conferred with Parker and Moran who were the only persons interested in the estate, all others having been paid, and who consented that the false report be made and the estate closed, thus releasing the bondsmen. According to the testimony, the residuary legatees were to assume the remaining debts of the estate, namely, the notes to the plaintiff and to the bank, thus making it possible to close the estate, and the assets were then to be turned over to the residuary legatees. Undisputed documentary evidence supports this testimony.

After the filing of the final account on April 18, 1935, and prior to the closing of the estate, the residuary legatees, Parker and Moran, each signed and filed in the probate court a receipt acknowledging the payment in full of all real and personal property bequeathed to them respectively and each acknowledged the receipt of her distributive share of the residuum of the estate.

In May, 1935, the residuary legatees, Parker and Moran, executed a note to the bank and another to the plaintiff thereby cancelling the obligations of the estate as represented by the notes of the executors to plaintiff and the bank. Concerning these notes, the defendant testified:

"A. Mr. Terrall told me that they owed Mrs. Caspar and that they would have to take the notes and those things to pay up, and that is all I know about it; I never knew I owed Mrs. Caspar.
"Q. Well, the estate did.
"A. The estate wasn't me."

The trial court found:

" * * * The two notes theretofore signed, executed and delivered by these executors, one to the plaintiff, Sarah K. Caspar for $4,000.00 and interest, and the other for $5,000.00 and interest to the bank at Union, Oregon, were retired and replaced by the notes above mentioned as having been signed, executed and delivered to Mr. Terrall by the defendant, Viola Parker and Mrs. Moran, and the administration of the estate of Esther E. Pursel was closed, based upon the final account in form and substance as above stated, and the executors, Terrall and Davis, were discharged, and the properties shown in this final account to be then in the hands of these executors and belonging to this estate, were distributed to the defendant, Viola Parker and Mrs. Moran * * *."

The finding is supported by evidence. Mrs. Parker admits the receipt of the assets remaining in the estate after the execution of the notes by herself and Mrs. Moran.

The undisputed evidence discloses that the note of the defendant, Parker, and Moran payable to the plaintiff, Caspar, was executed prior to the closing of the estate which occurred on December 16, 1935. It follows as a matter of law that there was good and valuable consideration for the note of Parker and Moran to the plaintiff. The retirement of the note of the executors which "was a debt and obligation of the Pursel estate" constituted consideration for the note of Parker and Moran. The defendant claims that the plaintiff negligently failed to file a claim against the Pursel estate for the amount of the note, but prior to the closing of that estate, the plaintiff ceased to be a creditor thereof having accepted the obligation of Parker and Moran in lieu of the obligation

of the estate. Thereafter the plaintiff had no interest in the Pursel estate and no duty with reference to it.

■ In May, 1936, and after the closing of the estate, the residuary legatees, Parker and Moran, executed in writing a settlement of their respective interests in the Pursel estate property. By virtue of that instrument which is in evidence, the defendant, Parker, assumed the obligation of Parker and Moran to the plaintiff and took the bulk of the property of the estate. Pursuant to the agreement, the note of Parker and Moran to the plaintiff was retired and the note of the defendant, Parker, substituted therefor. The retirement of the Parker and Moran note was good consideration for the note of the defendant.

It is upon this note, executed by the defendant on August 20, 1936, that the pending action was brought. From the foregoing it will become apparent that the defendant was not directly liable on the original note of the executors to the plaintiff, but it is also clear that if the notes of the executors to the bank and to the plaintiff had been paid by the executors prior to the closing of the estate, the amount of the assets for distribution to the residuary legatees would have been proportionately reduced. The testimony of the defendant was not to the effect, as alleged in her answer, that Terrall advised her that she was liable on the debt of the estate. On the contrary, her testimony was in substantial harmony with that of the other witnesses and was to the effect that she signed the note with the understanding that her part of the estate would be settled. She testified as follows:

"Q. Well, now, I want to ask you what you said and what Mr. Terrall said to you at the time of the signing of this note—Exhibit "A".

"A. I signed it with the understanding that my part of the estate would be settled.

"Q. Well, what was the conversation between you and Mr. Terrall?

"A. Not very much, if anything, only that I should sign it so that my part of the estate—that the estate would be settled.

Again, she testified:

"A. I signed the note to have that part of the estate that was left to me in a condition that it would come to me.

&ast; &ast; &ast; &ast; &ast;

"Q. &ast; &ast; &ast; You learned to read and write, didn't you; didn't you read any of these papers?

"A. I didn't, but they were read to me at other times—interest and notes were read to me and that's all I know about it.

&ast; &ast; &ast; &ast; &ast;

"Q. You knew you were assuming this indebtedness?

"A. No, I didn't know I was assuming any indebtedness.

"Q. You signed the notes.

"A. Signed the notes so we would—we could have our division."

In answer to a question of the court, the defendant said:

"A. &ast; &ast; &ast; we were to obligate me to pay those bills.

"Q. You were—you understood at that time, didn't you, Mrs. Parker, that they had borrowed this money?

"A. I understood at that time they had borrowed it."

In her answer the defendant denies that any payments were made on the Caspar note. Upon that issue she testified as follows:

"Q. Yes. Now, you had paid some on that, hadn't you?

"A. Well, I suppose Mr. Terrall had.

"Q. Mr. Terrall had. Mr. Terrall was collecting the money and paying on your bills?

"A. I suppose so."

■ A careful examination of the entire record fails to disclose any evidence that Terrall represented to the defendant "that she had to sign the note in controversy; that she was liable therefor." All of the evidence is to the effect, as found by the court, that he represented to the defendant that there was not sufficient cash with which to pay the obligation of the estate to the bank and to the plaintiff and that it would be necessary for defendant and Mrs. Moran to assume that indebtedness in order that the estate might be closed and the assets distributed to the residuary legatees. The trial court made no finding that the plaintiff was guilty of the alleged false representation set forth in the defendant's answer. The court's conclusion that the plaintiff, by reason of the conduct of Terrall, was chargeable with fraud rests upon grounds entirely distinct from those alleged in the answer.

■ The trial court made a special finding to the effect that there was $12,807.96 in cash in the hands of the executors at the time of the filing of the final account instead of $524.17 as shown in the final account. Based upon that finding, the court made a conclusion of law as follows:

"* * * The material representation made by plaintiff through her said agent to the effect that

in order to close the administration of the estate of Esther E. Pursel, deceased, at that time and turn over to the defendant and Mrs. Moran as residuary legatees and devisees under the Last Will and Testament of the said Esther E. Pursel, the properties shown by the Final Account in this estate then in the hands of the executors of this estate, it was necessary for the defendant and Mrs. Moran as such residuary legatees and devisees to assume and pay the indebtedness of said executors to plaintiff as evidenced by the note for $4000.00 of said executors then held by the plaintiff, were false * * *''

and fraudulent. There is no evidence that the representations made by Terrall were made as representative of plaintiff or were for her benefit. Neither the finding that there was $12,807.96 in cash in the hands of the executors, nor the conclusion of law based thereon is supported by the evidence, nor can they support the judgment entered thereon. The findings of fact disclose the manner in which the court arrived at the conclusion that there was $12,807.96 in cash in the hands of the executors at the time of the filing of the final account.

The principal administration of the Pursel estate was in Union County, Oregon, with an ancillary administration in Washington County, Idaho. The final account filed in Union County, Oregon, showed receipts of $28,259.97 with disbursements in the payment of claims and legacies and expenses of probate in the amount of $27,735.80, leaving a balance of $524.17. The report showed that $10,000 out of the total disbursements had been paid to the defendant, Parker, in full payment of her specific legacy. From the testimony of the witness Terrall, it was established that about $5,000 of Mrs. Parker's specific legacy was not, in fact, paid as set forth in the report. The final account in the Idaho administration showed that $7,283.79 was re-

ceived from the sale of Idaho property and distributed to the legatees under the will. From the testimony of witness Terrall, it appears that that sum came to the domiciliary executors in Oregon and did not go direct to the specific legatees though ultimately paid to them. On the basis of these facts, the trial court concluded that since the final account showed $10,000 paid out to the defendant, Parker, whereas, in fact, only $5,000 was paid out, there must have been a balance of $5,000 in cash in the hands of the executors at the time of the filing of the final account. The court also concluded that since $7,283.79 came into the hands of the domiciliary executors from the sale of properties in Idaho and since the final account in the Oregon administration failed to show any such receipt, the executors must have had that sum of money in cash in their possession at the time of the final account. The court, therefore, proceeded to add: $5,000, $7,283.79, and $524.17 (the amount shown as the cash balance in the Oregon estate), and arrived at a total of $12,807.96 as cash in hand in the possession of the executors at the time of the filing of the final account. It was upon the basis of this conclusion that the court held that Terrall had falsely represented to the defendant that by reason of insufficiency of *cash* it was necessary for her to assume the indebtedness to the plaintiff in order to secure a distribution of the other assets of the estate. It is true that the Oregon final account falsely showed the amount paid to defendant, Parker, and failed to show the amount received from the Idaho property, and that both final accounts misrepresented the true state of affairs, but there is no evidence that there was $12,807.96, or any specific cash sum in excess of $524.17 in the hands of the executors at the time of the filing of the final account. The

uncontradicted evidence which is conclusively established is that the final accounts were falsely prepared for the purpose of concealing the fact that $9,000, or perhaps more, was expended by the executors in attempting to operate the insolvent hotel. The expenditure of the estate funds by the executors in the operation of the hotel is not merely admitted by the defendant, it is perhaps her chief ground of complaint. In the defendant's brief we read:

> "The executors put many thousands of dollars of money belonging to the estate of Esther E. Pursel into the hotel without authority under the will or otherwise without any order of the County Court. * * * *"

The trial court itself specifically found that $9,000 was advanced to the hotel company by the executors. The undisputed evidence shows that with the exception of a part of the bequest to the defendant, Parker, all specific bequests and all expenses of administration in Oregon and in Idaho were paid in cash in addition to $9,000, or more, advanced to the hotel. The trial court properly found that funds came into the possession of the executors which were not accounted for in the final account, but the error lies in the fact that the court ignored its own finding that the unaccounted for funds were expended in the hotel project and that they, therefore, did not represent cash in the hands of the executors at the time of filing the final account. There is no evidence that there was sufficient cash on hand to pay the debts owing to the bank and to the plaintiff at the time of the filing of the final account or at the time of the execution of the note by Parker and Moran to the plaintiff, both of which events occurred prior to the closing of the estate. There is, therefore, no evidence that Terrall's representation as set forth in the con-

clusions of law, supra, was false. It should also be observed that the alleged false representations set forth in the court's conclusions of law are not the representations upon which the defendant relied in her answer.

■ We find no evidence from which the conduct of Terrall in falsifying the accounts of the estate can be attributed to the plaintiff. She was not concerned with the administration of the estate or of the hotel, nor had she any interest in concealing the true facts from the court. Nor, so far as we can see, did she gain any benefit by surrendering the note of the executors and taking in lieu thereof the note of Parker and Moran, or by surrendering that note and taking the note of the defendant, Parker. Those were merely matters of concern to the residuary legatees, the executors and the bondsmen. If Parker and Moran had not taken up the obligation of the estate to the bank and to the plaintiff, it is obvious that the estate could not have been closed and the plaintiff and the bank could have collected their claims in full. The undisputed evidence shows that assets which were turned over to the residuary legatees upon their assumption of the debts of the estate far exceeded the amount of those debts.

Our conclusion is that the defendant has failed to present any substantial evidence in support of her plea of fraud.

■ The defendant insists that Terrall represented both the plaintiff and the defendant and stood in the relationship of trust and confidence to each and that the burden of proof therefore shifted from the defendant to the plaintiff. It is urged that the plaintiff can not recover unless she affirmatively proves that there was no fraud. In support of this contention, the defendant cites numerous cases involving parties be-

tween whom there existed a relationship of trust and confidence. Although there is some language in *Phipps v. Willis,* 53 Or. 190, 96 P. 866, 99 P. 935, 18 Ann. Cas. 119, which tends to support the defendant's view of the law, we think it incorrect to say that the burden of proof rests upon the fiduciary to prove the absence of fraud or unfair dealing. The true rule appears rather to be that where a fiduciary deals with, and profits at, the expense of his principal, there may arise a presumption of fraud requiring the fiduciary to go forward with the evidence and show that the dealings have been free from fraud or undue influence. *In re Brown's Estate,* 165 Or. 575, 108 P. (2d) 775; *Ramstead v. Bridges, ante* p. 182, 152 P. (2d) 306; *Williamson v. North Pac. Lumber Co.,* 42 Or. 153, 70 P. 387, 532; 37 C. J. S., Fraud, § 95, p. 401.

But even that rule has no application in the case at bar. The rule which raises a presumption of fraud or undue influence against a fiduciary and imposes upon him the burden of going forward with the evidence applies to cases in which the fiduciary is a party. In the case at bar, Terrall was not a party litigant. The plaintiff bore no fiduciary relationship to the defendant. Both plaintiff and defendant were presumed innocent and the party asserting fraud had the usual burden of proving it by a preponderance of the evidence. In the absence of any substantial evidence of fraud legally attributable to the plaintiff, the defense must fail.

The Constitution of Oregon provides that

" * * * if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect

as decrees are now entered in equity cases on appeal to the supreme court  \*  \*  \*.'' Or. Const., Am. Art. VII, § 3.

■ The entire record is before us. The plaintiff has established her case as set forth in the complaint, and the defense having failed, plaintiff is entitled to judgment. The judgment of the lower court is therefore reversed and the cause is remanded to the circuit court with directions to render a judgment in favor of the plaintiff and against the defendant in the sum of $3,861.80 with interest thereon from the 20th day of August, 1936, at the rate of six per cent per annum, less the sum of $929.87 which has been paid thereon, and for the further sum of $300 as reasonable attorneys' fees, together with plaintiff's costs and disbursements in this action.