Argued January 8; reversed and remanded February 10, 1948

# BUCKMAN *v.* HILL MILITARY ACADEMY

189 P. (2d) 575

*Robert G. Clostermann,* of Portland, argued the cause and filed a brief for appellant.

*John C. Veatch,* of Portland, argued the cause for respondent. On brief were Veatch & Bradshaw, of Portland.

Before Rossman, Chief Justice, and Belt, Kelly, Bailey and Hay, Justices.

HAY, J.

On October 8, 1929, Hill Military Academy, an Oregon corporation, executed and delivered to Miss Elma Buckman its promissory note in the sum of $14,000, due five years after date and bearing interest at six per cent per annum, payable semi-annually. The note contained an acceleration clause giving the holder the option, upon default in due payment of the interest, to declare the whole indebtedness to be immediately due and collectible.

On or about June 10, 1935, Miss Buckman and Hill Military Academy executed an extension agreement in writing, reading as follows:

"June 10, 1935

"Mr. Joseph A. Hill, President,
"Hill Military Academy,
"Rocky Butte, Oregon.

"Dear Mr. Hill:

"This letter constitutes a receipt for the sum of $420.00 received as of this date from Mr. Joseph Hill, to be applied on a certain note given by the Hill Military Academy for $14,000.00 dated November 1st, 1929, and made out in favor of Elma Buckman.

"This money is accepted subject to the following stipulations which the undersigned parties hereby agrees to:

"A further payment of $1680.00 is to be made on this note prior to September 10, 1935. If such payment is made, time being the essence of this agreement, Elma Buckman agrees in consideration of said payment of $1680.00 to enter with proper notation, credits on the said note which shall reduce the principal balance due under said note to an amount equivalent to $560.00 per acre on the acreage not released from the mortgage securing the above described note; and further, by proper notation on said note, show all interest paid to June 10, 1935. It is further understood that in consideration of the above mentioned payments, the interest required on the principal of said note shall be reduced to 2% for the year from June 10, 1935 to June 10, 1936, and said interest rate shall be increased one per cent each succeeding year until said rate shall reach 6% where it shall remain until the balance is paid in full. It is also agreed that beginning September 1, 1935, $175.00 of the principal balance due on the note shall be paid together with interest due to date, and that $175.00

of said balance together with interest shall be paid at the end of each three month period thereafter. Above payments are to be credited upon balance of $560.00 per acre.

"In the event of failure to make the payment of $1680.00 required before September 10, 1935, no adjustment shall be made on the principal balance now showing on said note other than the credit herein receipted for. In the event of failure to make the quarterly payments specified above beginning with that of December 1, 1935, for a period of six months, the above agreement reducing interest rates shall be null and void and the interest rate shall immediately return to 6%.

"The undersigned agrees upon receipt of the above mentioned payments to release nine of the lots held as security, the location of said lots to be agreed upon between the parties.

"The undersigned further agrees that for each $300.00 paid and interest as above provided, to release one additional lot to.

"All other stipulations and provisions of the above described note and the mortgage securing said note, not mentioned herein, shall remain in full force and bind the parties hereto accordingly.

"IN WITNESS WHEREOF, the undersigned parties have hereunto set their hands this 21 day of June, 1935.

> "Elma Buckman
> "Hill Military Academy
> "Joseph A. Hill, Pres.

"Modification of original agreement approved in accordance with the changes herein provided.

"All payments due or to become due are to be paid directly to General Discount & Mtg. Co. of Seattle, c/o Lloyd Holtz, 1124 Vance Bldg., Seattle, Wash.

> "Elma Buckman
> "Hill Military Academy
> "Joseph A. Hill, Pres.''

The date of November 1, 1929, mentioned in the foregoing, was erroneous. No question is raised that the agreement was made with reference to any other than the promissory note of October 8, 1929.

On August 28, 1944, Miss Buckman instituted the present action upon the promissory note as modified by the extension agreement. The complaint alleged the execution and delivery of the note and the execution of the agreement; that the last payment made "on said agreement" was $53.07 on May 10, 1938, leaving an unpaid balance of $4,530, which, with interest thereon at six per cent per annum from May 10, 1938, until paid, "is now due and payable according to the terms of said contract"; that $500 is a reasonable amount to be allowed as attorney's fees in the action; and that plaintiff is the owner and holder of the note and agreement. Judgment was demanded accordingly.

Defendant demurred to the complaint on the ground that it appeared on the face thereof that the action had not been commenced within the time limited by the statute of limitations. (Section 1-204, O. C. L. A.) The demurrer was overruled.

By an amended answer, defendant admitted the execution and delivery of the note and the execution of the extension agreement, but denied all other allegations of the complaint. Affirmatively, it alleged that defendant made the payments, principal and interest, in accordance with the terms of the extension agreement, until on or about May 10, 1938; that, at that time, it had paid to plaintiff, in addition to payments theretofore made and for which certain lots of the real property mortgaged in security for payment of the note had been released, a further sum of $350; that it had demanded of plaintiff the release of an

additional lot on account of such payment, but that plaintiff "failed, neglected and refused to release any more lots on account of payments in accordance with the terms of said agreement, and said agreement was abandoned and cancelled by the mutual consent of both parties thereto on or about the 17th day of June, 1938." These allegations were denied by the reply.

A hearing was held by the court, sitting without a jury, at which, after plaintiff had rested her case, defendant submitted the cause upon plaintiff's evidence. The court took the matter under advisement, and, in due course, made general findings in favor of defendant and entered a judgment or decree dismissing the cause. Plaintiff appeals.

■ The trial judge, with the mute acquiescence of counsel, treated the cause as if it were in equity rather than at law. As the parties thus submitted themselves voluntarily to the court's equitable jurisdiction, and as there was at least one feature of the case in respect of which, as hereinafter noted, adequate relief could have been granted only by a court of equity, we shall assume that the action of the court in this respect was proper. 19 Am. Jur., Equity, section 75; *Gillihan v. Cieloha,* 74 Or. 462, 468, 145 P. 1061; *Fisk v. Leith,* 137 Or. 459, 464, 299 P. 1013, 3 P. (2d) 535.

■ It is suggested that, by answering over after its demurrer had been overruled, the defendant waived the defense of the statute of limitations. This point cannot be sustained. Our statute (section 1-710, O. C. L. A.) provides that, when a demurrer based upon the statute of limitations has been overruled, the question of whether or not the action or suit has been commenced within the proper time is not waived by answering over.

■ The extension agreement modified the note by changing the time and manner of payment. It was entered into subsequent to the maturity of the note, but before the statute of limitations had run thereon. The effect of the agreement was to create a new contract between the parties. 37 C.J., Limitations of Actions, section 199, and Note c. Under such new contract, the note was made payable by installments, and the rule is that the statute of limitations runs against each installment from the time when it becomes due. 34 Am. Jur., Limitation of Actions, section 142; *Bush v. Stowell,* 71 Pa. St. 208, 10 Am. Rep. 694, 696; *Griffin v. Macon County,* (Mo.) 36 F. 885, 886, 2 L.R.A. 353; Anno., 82 A. L. R. 316, 317. The acceleration clause in the note was not self-executing. It could be called into play only at the option of the holder, and such option was not exercised. Mere nonpayment of any installment of principal or interest, therefore, did not have the effect of causing the whole obligation to mature. *Brady v. Selberg,* 154 Or. 477, 481, 60 P. (2d) 1104; *Holt v. Guaranty & Loan Co.,* 136 Or. 272, 285, 296 P. 852.

Considering the allegation of defendant's answer that defendant, until about May 10, 1938, made all of the payments required under the extension agreement, we shall assume, without deciding, that it made payments upon the principal of the note as follows: $420 on execution of the agreement, $1,680 prior to September 10, 1935, and eleven quarterly installments of $175 each, the first such installment having fallen due September 1, 1935, and the last March 1, 1938. Such payments, if made, aggregated $4,025, leaving an unpaid balance of principal amounting to $9,975. The complaint, however, alleges an unpaid balance of only

$4,530, which figure, we suppose, must have been based upon a readjustment of principal in accordance with the provisions of the extension agreement.

The note and the extension agreement were, in effect, one contract, and the action was upon that contract. *Orpheus Vaudeville Co. v. Clayton Inv. Co.*, 41 Utah 605, 128 P. 575. Ordinarily, a collateral agreement varying the terms of a negotiable instrument need not be pleaded, unless such pleading is essential to plaintiff's cause of action. 10 C. J. S., Bills and Notes, section 578. Here, it was necessary to plead the agreement, as the statute of limitations could have been pleaded against a cause of action based solely upon the note.

The real property mortgage which was given to secure the note was offered in evidence by plaintiff, but, on defendant's objection that it had no bearing upon the issues of the case, it was withdrawn. We think that it should have been received, and that it should have been followed (as plaintiff, no doubt, intended) by evidence showing the extent of the acreage which had not been released under the provisions of the extension agreement, in order that the amount of the unpaid principal of the note, as adjusted, might have been established.

It is argued that the evidence does not show that plaintiff was the holder of the note. This argument is based merely upon the fact that the evidence disclosed that Miss Buckman had at one time assigned the note, together with the extension agreement, to General Discount and Mortgage Corporation, a Washington corporation. Such assignment was made to secure a debt which Miss Buckman owed to the corporation. The complaint alleged that the plaintiff

was the owner and holder of the note and agreement, although such an allegation was not necessary. 10 C.J.S., Bills and Notes, section 594; *Dant & Russell, Inc., v. Ostlind,* 148 Or. 204, 212, 35 P. (2d) 668. Mr. Lloyd Holtz, an attorney and agent of the mortgage corporation, was one of the attorneys for plaintiff at the hearing of this case. He produced, at the hearing, an assignment by the corporation to Miss Buckman of a mortgage and trust agreement executed by Hill Military Academy in favor of Title and Trust Company of Portland, Oregon, dated October 8, 1929, given to secure the payment of the sum of $14,000. Such assignment included also the original note and extension agreement herein involved. The mortgage assigned was that to which reference was made in the extension agreement. It is contended that there was no evidence that the assignment was ever delivered to Miss Buckman.

"* * * 'Delivery' means transfer of possession, actual or constructive, from one person to another. 'Holder' means the payee or indorsee of a bill or note who is in possession of it, or the bearer thereof. * * * "

Section 69-1101, O. C. L. A.

This court has held that the word "holder", when used with reference to negotiable instruments, means "anyone in actual or constructive possession of the note, and entitled at law to recover or receive its contents from the parties to it." *Hodes v. Hodes,* 176 Or. 102, 108, 155 P. (2d) 564. Execution and delivery of the note was admitted by the answer, and, therefore, the plaintiff was *prima facie* entitled to recover from the maker whatever balance was due thereon. *Caspar v. Parker,* 175 Or. 555, 559, 154 P. (2d) 554. Although the

note had been assigned by Miss Buckman to the mortgage corporation, it was, as stated, afterwards assigned back to her. In the meantime, the note itself had been lost, and evidence was given excusing its non-production. 11 C.J.S., Bills and Notes, section 695. Miss Buckman testified that she did not assign or deliver the note to the mortgage corporation, but merely assigned the contract, and retained the note in her own possession. She was seventy-four years of age at the time of the hearing, and it is apparent, from a reading of her testimony, that her memory is not very reliable. In view of all the evidence, we are persuaded that she did in fact deliver the note to the corporation. It was competent for the corporation to transfer it back to her by assignment. 8 Am. Jur., Bills and Notes, section 301; 4 Am. Jur., Assignments, section 26. Proof of such reassignment, with the evidence excusing non-production of the note, was, in our opinion, sufficient, prima facie, to show that Miss Buckman was the holder of the note.

 The reassignment of the note and agreement by the mortgage company to Miss Buckman extinguished the pledge thereof. *Schumann v. Bank of California, N.A.,* 114 Or. 336, 348, 233 P. 860, 37 A. L. R. 1531. The mortgage company thereby relinquished whatever interest it had in the documents, and, having voluntarily lent its assistance to the payee to enable her to recover thereon, would be estopped afterwards to make a second recovery upon the same cause of action. *St. Paul Nat. Bank v. Cannon,* 46 Minn. 95, 48 N.W. 526, 527; *Hutchings v. Reinhalter,* 23 R.I. 518, 51 A. 429, 58 L.R.A. 680, 682; *Simansky v. Clark,* 128 Me. 280, 147 A. 205, 65 A.L.R. 1316, 1319, 1320. Even if the papers had not been reassigned to Miss Buck-

634

man, she could have brought an action thereon in any event in her own name, with the consent of the pledgee. Anno., 65 A. L. R. 1321, 1323. Her right as pledgor to bring such action would not be affected even if the papers had not been redelivered to her, but were still held by the pledgee when the action was commenced. 8 Am. Jur., Bills and Notes, Section 940; *Walmer v. First Acceptance Co.*, 192 Wis. 300, 212 N.W. 638, 51 A. L. R. 605, 608.

 It is asserted that it was incumbent upon the plaintiff, having brought suit to recover upon a contract, to prove that she had performed all of the conditions thereof on her part. This is the general rule. *Clerin v. Eccles*, 98 Or. 345, 350, 193 P. 1045; *Lewis v. Siegman*, 135 Or. 660, 664, 296 P. 51, 297 P. 1118. Specific reference is made to the fact that plaintiff did not plead or prove that she had performed the stipulation in the extension agreement to the effect that, for each $300 of principal paid, she would release one of the lots covered by the mortgage. The affirmative answer alleged that defendant had paid a sum of $350 of principal, for which it was entitled to the release of one additional lot, and that plaintiff refused to make such release. This allegation was denied by the reply, and an issue was thus made on the question of plaintiff's readiness and willingness to perform that part of the agreement. The defect in the complaint in this connection, if it was a defect, was, therefore, cured by the answer. *Catlin v. Jones*, 48 Or. 158, 162, 85 P. 515; *Davis Lumber Co. v. Coats Lumber Co.*, 85 Or. 542, 547, 167 P. 507; *Columbia Digger Sand & Gravel Co. v. Ross Island Sand & Gravel Co.*, 145 Or. 96, 105, 25 P. (2d) 911; *Morford v. California-Western States Life Ins. Co.*, 161 Or. 113, 120, 88 P. (2d) 303.

 It is to be observed, moreover, that the obligation to release portions of the security was a condition subsequent annexed to prior payment of certain sums upon the note. Proof of the happening of a condition subsequent defeating the cause of action is a defensive matter, as to which defendant has the burden of proof. 11 C.J.S., Bills and Notes, section 651. It is unnecessary for a plaintiff, in his initial pleading, to anticipate a defense and to negative or avoid it. 10 C.J.S., Bills and Notes, section 564.

 Plaintiff, as stated above, was unable to produce the promissory note at the hearing, and her failure to do so is relied upon by the defendant as a justification for dismissal of the cause. In order to recover upon a promissory note, it is necessary that the instrument be produced in court, or, at the least, that it be shown that there is no possibility of double liability thereon. If there is such possibility, it is held generally that the defendant is entitled to be indemnified in the premises. Anno., 129 A.L.R. 977, 978. Loss of a note does not change or impair the obligation of the parties thereto, and the holder may still enforce it by appropriate action. 34 Am. Jur., Lost Papers and Records, sections 4, 37. If plaintiff should be permitted to recover upon the lost note, it would be competent for a court of equity to require her to furnish suitable indemnity to the defendant against being subjected to further liability in case the instrument were subsequently found. 8 Am. Jur., Bills and Notes, section 787. It was not necessary for the complaint to allege the loss of the note, as such loss was no part of the cause of action. 8 Am. Jur., Bills and Notes, section 947; 34 Am. Jur., Lost Papers and Records, section 55. Execution and delivery were admitted, and, in order

that non-production of the note might be excused, it was necessary for the plaintiff to prove the fact of its loss. 8 Am. Jur., Bills and Notes, section 1121; 11 C.J.S., Bills and Notes, section 695 b.

"The necessary proof of the loss or destruction of a writing as the basis for the introduction of secondary evidence of its contents may be made by the use of any competent evidence which has a logical tendency to establish such fact. The precise quantum of proof that will suffice in this respect is obviously not susceptible of a general rule applicable to all situations that may arise. The question is always one of diligence in the effort to procure the original. It is clear, however, that the best evidence rule does not require proof of the loss or destruction of a writing beyond all possibility of mistake or proof that will exclude every hypothesis of the existence of the original. It is sufficient if the party satisfies the court that, after due and diligent search upon his part, the instrument cannot, due to its loss or destruction, be produced upon the trial. All that one is expected to show is that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him. * * * " 20 Am. Jur., Evidence, section 440.

See also 34 Am. Jur., Lost Papers and Records, section 62. Miss Buckman testified that she was unable to say what had become of the note. Mr. Holtz, as her witness, testified that his best recollection was that he had the original note in his possession at the time when he collaborated with other counsel in preparation of the complaint herein. He said that since then he had mislaid it or lost it "or something"; that he had made a search for it, but could not find it; and that he did not know what happened to it, but believed that he had lost it.

In *Sperry v. Wesco,* 26 Or. 483, 38 P. 623, the plaintiff testified that she had searched for a certain plat in several places where she thought it probably might be, but was unable to find it and believed it to be lost. Upon this testimony, secondary evidence of the plat was received. The court held that, tested by the rule which required the party alleging the loss of an instrument to show that he had, in good faith, exhausted in a reasonable degree all the sources of information and means of discovery which the nature of the case would naturally suggest, the plaintiff had made the required degree of proof. We are of the opinion that, tested by the same rule, the plaintiff in this case proved the loss of the note sufficiently to excuse its nonproduction. The note having been set out *in haec verba* in the complaint, and its execution and delivery having been admitted by the answer, secondary evidence of its contents was unnecessary. Defendant relies upon *Tillamook County Bank v. International Lumber Co.,* 106 Or. 339, 211 P. 183, 941. That case was an action to recover upon two bills of exchange. It was held that it was necessary for the plaintiff, before becoming entitled to a judgment for the amount of the bills, to produce them upon the trial, to identify them and to prove that they were genuine, and to deliver them up by offering them in evidence. This was not done, and, for that reason, recovery was denied. It is to be noted, however, that no evidence was offered in that case tending to excuse the nonproduction of the bills, nor was any evidence offered that, at the time of the trial, the plaintiff was the owner or holder thereof. The case, therefore, is to be distinguished upon the facts from the case at bar.

The affirmative defense that the extension agreement was abandoned and cancelled by mutual

consent of the parties was in the nature of a plea of confession and avoidance. Defendant appears to imply that such mutual rescission had the effect of discharging the note. However, it should be obvious that this is not so. Rescission of the extension agreement would simply restore the parties to their former position, leaving the debt unpaid. 12 Am. Jur., Contracts, sections 451, 455. Defendant admitted execution and delivery of the note, and the fact that the last payment thereon, under the terms of the extension agreement, was $53.07, made on May 10, 1938. Its formal denial that such payment left an unpaid balance of $4,530, with interest thereon, in accordance with the terms of the extension agreement, must be construed as only a qualified denial, modified by the defense of mutual rescission. *Creecy v. Joy,* 40 Or. 28, 31, 66 P. 295. The position taken by defendant in its pleading is that, because of the mutual rescission of the extension agreement, it was relieved of its obligation upon the note. Assuming, while not conceding, that discharge of the note might have been inferred 'from rescission of the extension agreement, it would have been necessary for the defendant, at the close of plaintiff's case, to have gone forward with proof of its affirmative defense of mutual rescission.

Under defendant's admissions, plaintiff made a *prima facie* case when she gave evidence excusing non-production of the note. We are of the opinion that the court erred in sustaining defendant's motion for dismissal. As a further hearing will be necessary, the decree is reversed, and the cause is remanded for further proceedings not inconsistent herewith.