John BLANCHARD,
by and through his guardian ad litem,
Donald Blanchard,
*Respondent,*

*v.*

KAISER FOUNDATION HEALTH PLAN
OF THE NORTHWEST,
an Oregon non-profit corporation,
*Appellant.*

(901207984; CA A71314)

844 P2d 248

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the brief were Chrys A. Martin, Lisa E. Lear and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Kevin Keaney, Portland, argued the cause for respondent. With him on the brief were Dolores Empey and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Before Joseph, Chief Judge, and Deits and Durham, Judges.

JOSEPH, C. J.

Durham, J., specially concurring.

## JOSEPH, C. J.

Plaintiff,[1] who is covered by defendant's group medical plan, brought this declaratory judgment action, contending that defendant's denial of coverage for a procedure violated ORS 743.706. Both parties moved for summary judgment. The trial court granted plaintiff's motion and denied defendant's. Defendant appeals and assigns error to both rulings. We reverse.

Plaintiff has partial anodontia, which is a congenital condition that has left him with only 10 teeth. An adult normally has 32. His oral surgeons have recommended a treatment plan consisting of the implantation of titanium fixtures in his anterior maxillary and mandibular arches, dental prosthetics and orthodontic care.

ORS 743.706 provides:

"(1)  The Legislative Assembly declares that all group health insurance policies providing hospital, medical or surgical expense benefits include coverage for maxillofacial prosthetic services considered necessary for adjunctive treatment.

"(2)  As used in this section, 'maxillofacial prosthetic services considered necessary for adjunctive treatment' means restoration and management of head and facial structures that cannot be replaced with living tissue and that are defective because of disease, trauma or birth and developmental deformities when such restoration and management are performed for the purpose of:

"(a)  Controlling or eliminating infection;

"(b)  Controlling or eliminating pain; or

"(c)  Restoring facial configuration or functions such as speech, swallowing or chewing but not including cosmetic procedures rendered to improve on the normal range of conditions.

"(3)  The coverage required by subsection (1) of this section may be made subject to provisions of the policy that apply to other benefits under the policy, including, but not limited to, provisions relating to deductibles and coinsurance.

---

[1] Plaintiff appears through his father, his guardian *ad litem*.

"(4) The services described in this section shall apply to individual health policies entered into or renewed on or after January 1, 1982."

Defendant denied coverage for the treatment on the ground that it was not "maxillofacial prosthetic services considered necessary for adjunctive treatment" as defined in ORS 743.706(2).

The parties submitted affidavits from expert witnesses, which disclose a factual dispute about the nature of plaintiff's condition and the treatment plan. Defendant's expert averred:

"5. The treatment plan involving dental implants, dental prosthetics and orthodontic care consists of only conventional dental services, not maxillofacial prosthetic services considered necessary for adjunctive treatment.

"6. The absence of teeth caused by John Blanchard's partial anodontia is a dental condition which is functionally no different than that experienced by individuals who have lost teeth due to dental disease or extraction. By the same token, the treatment plan for this condition is no different than a treatment plan for an individual who has lost teeth due to dental disease or extraction."

However, plaintiff's expert stated that his condition "has resulted in the alteration of the maxillary and mandibular facial arches and associated supporting structures" and that the titanium implants are necessary "for replacement and restoration of facial structures to achieve adequate functional occlusive relationships between his upper and lower jaw." He also stated that the procedure "involves reconstruction of posterior and anterior teeth to restore congenitally absent facial structures as well as manage the progressive maxillary and mandibular bone loss." He denied that the plan is a cosmetic procedure. His affidavit says:

"10. The restoration and management of these facial structures cannot be obtained by replacement of living tissue.

"11. Partial anodontia, if not treated or managed by medical procedures at an early age while non-permanent teeth are still present, will result in progressively worsening temporal mandibular joint dysfunction, bone loss, and atrophy of the alveolar ridges and supporting bone structures.

This will ultimately lead to chronic pain and recurrent infection around the permanent teeth as well as degenerative changes in the temporal mandibular joint.

"12. Failure to reconstruct the facial structures will result in progressively worsening speech problems, as well as difficulty masticating and swallowing food."

The experts disagree about whether the treatment plan will replace the missing teeth or will reconstruct head and facial structures to control pain and infection and restore functions such as speech, swallowing and chewing.

The conflict in the evidence precludes a summary judgment for plaintiff, even under his understanding of what the statute requires be covered. Defendant contends, however, that the treatment plan, even as plaintiff's expert describes it, entails purely dental services and is not "adjunctive" to medical treatment. Defendant reasons that the possible alleviation of the medical conditions to which plaintiff's expert testified is conjecture and, in any event, does not make the dental services for which he seeks coverage "adjunctive" to any medical treatment for a medical condition. Therefore, defendant urges us to conclude, its motion for summary judgment should have been granted. *See Cochran v. Connell*, 53 Or App 933, 632 P2d 1385, *rev den* 292 Or 109 (1981).

We agree with defendant's understanding of the statute. The clear meaning of ORS 743.706(2) is that "maxillofacial prosthetic services" must be an adjunct of other treatment and must be aimed at the alleviation or cure of the medical conditions enumerated in subsections (a), (b) and (c). As defendant observes, the statute was not meant to and cannot be read as prohibiting the exclusion of ordinary dental services from medical insurance policies. Rather, it bars the exclusion of a narrow category of services that may have dental attributes but which are treatments for medical problems and that are "adjunctive" to medical treatments. However, even under defendant's and our reading of the statute, there is sufficient evidence in the affidavit of plaintiff's expert to present a question of fact as to whether coverage is required.

Reversed and remanded.

**DURHAM, J.,** specially concurring.

I agree with the majority that the parties' disagreement about whether the treatment plan describes a service that must be covered pursuant to ORS 743.706(2) cannot be resolved by a summary judgment. However, the majority applies an interpretive gloss to the statute that changes its clear meaning and that will undermine its proper application on remand. I do not agree with that construction.

ORS 743.706 provides:

"(1)   The Legislative Assembly declares that all group health insurance policies providing hospital, medical or surgical expense benefits include coverage for maxillofacial prosthetic services considered necessary for adjunctive treatment.

"(2)   As used in this section, 'maxillofacial prosthetic services considered necessary for adjunctive treatment' means restoration and management of head and facial structures that cannot be replaced with living tissue and that are defective because of disease, trauma or birth and developmental deformities when such restoration and management are performed for the purpose of:

"(a)   Controlling or eliminating infection;

"(b)   Controlling or eliminating pain; or

"(c)   Restoring facial configuration or functions such as speech, swallowing or chewing but not including cosmetic procedures rendered to improve on the normal range of conditions.

"(3)   The coverage required by subsection (1) of this section may be made subject to provisions of the policy that apply to other benefits under the policy including, but not limited to, provisions relating to deductibles and coinsurance.

"(4)   The services described in this section shall apply to individual health policies entered into or renewed on or after January 1, 1982."

The majority concludes that the statute bars the exclusion from coverage of "medical," as opposed to "dental," services, including medical treatments that "may have dental attributes but which are treatments for medical problems and that are 'adjunctive' to medical treatments." 117 Or App at 381.

As we attempt to discern the legislature's intention, we cannot insert what has been omitted from the statute. ORS 174.010. We begin the examination with the words of the statute. *Teeny v. Haertl Constructors, Inc.*, 314 Or 688, 694, 842 P2d 788 (1992). In subsection (2), the legislature has provided a comprehensive definition of the phrase "maxillofacial prosthetic services considered necessary for adjunctive treatment." The legislature intended us to apply *its* definition of that term, not a definition that we might obtain from another source. What becomes obvious upon examining the definition in subsection (2) is that the majority's distinction between medical and dental services is nowhere to be found. A covered service must satisfy three requirements. First, it must restore and manage head and facial structures; second, those structures must be incapable of replacement with living tissue and be defective because of disease, trauma or birth or developmental deformities; and, third, the service must be performed for one of the purposes in subsection (2)(a), (b) or (c). The requirements do not distinguish between services that might be labeled "medical" or "dental." Furthermore, nothing in subsection (2) bars exclusion of a treatment only if it is "adjunctive" to another medical treatment. The majority recognizes distinctions in treatments that have no basis in the statutory definition. It has inserted into the statute that which it believes the legislature intended but omitted. That construction violates ORS 174.010.

The statutory definition is not ambiguous. However, even if it were, the legislative history supports plaintiff. The legislature enacted the present form of ORS 743.706 in 1981 in response to testimony from medical and dental professionals that insurers were delaying or refusing payment for services rendered by dentists, not physicians. *See Allen v. Pacific Hospital Assoc.*, 91 Or App 356, 362 n 2, 757 P2d 428 (1988). The legislature eliminated any distinction between medical and dental services for the purpose of mandating coverage, notwithstanding that distinction. The majority nullifies that effort by reintroducing the distinction through its interpretive gloss on ORS 743.706(2). The legislature intended to require coverage for services described in the statute, even if it involved anchoring a prosthetic device to the teeth. That is the treatment contemplated here, according to plaintiff's experts.

Defendant's argument that the trial court's decision would require it to cover ordinary dental services under its medical insurance plan is unconvincing. It ignores the other elements of the statutory definition.

If the treatment for plaintiff's congenital condition is that described by plaintiff's experts, it meets the definition in subsection (2) and must be covered. We must liberally construe the Insurance Code "for the protection of the insurance-buying public." ORS 731.008; ORS 731.016. The majority's construction of ORS 743.706(2) disregards that rule.