Argued and submitted May 29, reversed and remanded with instructions September 8, reconsideration denied November 5, petition for review denied December 2, 1981 (292 Or 109)

COCHRAN et al,
*Appellants,*

*v.*

CONNELL et al,
*Respondents.*

(No. 79-3320-E-1, CA 19216)

632 P2d 1385

Patrick G. Huycke, Medford, argued the cause for appellants. With him on the briefs was Robertson, Hilts & Huycke, Medford.

Karen C. Allan, Medford, argued the cause for respondents Ida A. Connell and Silvora Obenchain. With her on the brief was Foster & Purdy, Medford.

Thomas J. Owens, Medford, filed the brief for respondent Faye Cochran.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

Plaintiffs, as purchasers, brought this action to enforce an earnest money agreement for the sale of a parcel of real property in Jackson County. The property is an asset of the estate of George W. Learned. Defendant Faye Cochran is personal representative of the estate. Defendants Connell and Obenchain are heirs of the deceased. The court granted the heirs' motion for summary judgment, and judgment was subsequently entered in favor of all defendants,[1] dismissing plaintiffs' complaint and awarding defendants attorney fees. Plaintiffs appeal; we reverse.

The facts are undisputed.[2] On April 26, 1979, defendant Faye Cochran, as personal representative of the Learned estate, listed the property for sale with Red Carpet Realty, a member of a multiple listing service. On June 22, 1979, plaintiffs presented an offer to purchase to Wayland Fincher, an agent for Four Points Realty, which is also a member of the multiple listing service. The offer was made by use of a printed earnest money agreement. The contract language specifically contemplates that the purchasing party would make an offer to purchase to be accepted by the seller. Plaintiffs made the offer by filling in various blanks in the form, including one by which they allowed the realtor three days to secure the seller's acceptance. They deposited $500 earnest money in the form of a promissory note and offered to pay another $10,500 on closing. The terms for payment of the remainder of the purchase price were hand written on an attached exhibit marked "B." The exhibit is a printed form with signature lines at the bottom. Printed language immediately preceding the signature lines and following the hand written terms states:

[1] Plaintiffs and defendants Connell and Obenchain moved for summary judgment pursuant to ORCP 47; defendant Personal Representative Cochran did not. The majority view held by federal courts is that judgment may be entered in

favor of a non-moving party (the Personal Representative in the instant case), provided the party against whom summary judgment is granted has had a full and fair opportunity to contest whether there is a genuine issue of material fact to be tried. *See* 6 Moore's Federal Practice § 56.12 (1976). No objection was made to the procedural propriety of granting summary judgment to the non-moving defendant in this case. ORCP 47 does not cover the point.

[2] Because the matter came before the trial court on motions for summary judgment, the facts have been taken from plaintiff's second amended complaint, the separate answers and counterclaims of the defendants and various affidavits, exhibits and depositions, supporting the motions.

"This agreement, when signed by both parties, is hereby made a part of the foregoing earnest money contract."

Plaintiffs signed the contract and the exhibit and delivered it to Fincher.

Fincher presented the offer to Tom Owens, the attorney for the Learned estate. Owens requested additional time to study the offer. The offer was modified, with plaintiffs' approval, to allow the realtor an additional ten days to secure acceptance. On July 3, 1979, Owens called and informed Fincher that the personal representative would accept the offer.[3] Faye Cochran, however, was out of town and was unable to sign the agreement until July 9.

On that date Fincher went to Owens' office to obtain the signature. At that time, Owens, in the presence of the personal representative, asked whether plaintiffs could pay an additional $2,000 down. Fincher left Owens' office and spoke with plaintiff C. Douglas Cochran, who in turn talked with plaintiff Torres. Both men agreed to the additional down payment, provided they would be allowed another 30 days to close. Again, on July 9, Fincher returned to Owens' office and informed him of plaintiffs' assent and request for additional time. Owens agreed and instructed Faye Cochran, who was his secretary as well as the personal representative, to type the modified terms onto the addendum. After the language was added, Faye Cochran signed and dated the earnest money agreement and the addendum. Fincher then returned the agreement with the new language to plaintiffs. Both plaintiffs approved the language, and plaintiff C. Douglas Cochran signed his name on the first page to acknowledge receipt of a copy of the document. Fincher returned to Owens' office, informed him and Faye Cochran that plaintiffs had found the new language acceptable and left them copies of the agreement. Fincher and Owens then discussed closing the transaction. Owens instructed Fincher to order a preliminary title report and stated that he (Owens) would prepare the contract of sale called for in the earnest money agreement.

---

[3] Fincher advised plaintiffs of the oral acceptance by Owens on behalf of the estate. Plaintiffs then substituted $500 cash for the promissory note that had been delivered with the offer.

On August 24, 1979, Owens wrote plaintiffs asking them to step aside so that the estate could proceed with a sale to a third party on more favorable terms. On September 10, 1979, plaintiffs informed defendants that they wished to close the transaction. Defendants refused, and this action ensued.

The parties throughout have treated the estate's proposal for an increased down payment as a counter-offer. As noted previously, a printed term of the addendum (exhibit "B") provided that it would become part of the earnest money contract "when signed by both parties." Defendants construe this language to mean that plaintiffs had to sign the addendum a second time in order to accept the counter-offer. The trial court agreed with that construction and, because plaintiffs gave only their verbal assent to the modified terms, found that a contract had not been formed.

■        An offeror may restrict the manner of acceptance, provided his intention to do so is clearly expressed.

"The offeror creates the power of acceptance; and he has full control over the character and extent of the power that he creates. He can prescribe a single and exclusive mode of acceptance. It makes no difference how unreasonable or difficult the prescribed mode may be, *if* the offeror *clearly expresses, in the terms of the communicated offer itself, his intention to exclude all other modes of acceptance.* The more unreasonable the method appears, the less likely it will be that a court will interpret his offer as requiring it and the more clear and definite must be the expression of his intention in words." 1 Corbin on Contracts § 88, 373-374 (1963). (Emphasis supplied.)

■        This case turns on the meaning of the clause "This agreement, when signed by both parties, is hereby made a part of the foregoing earnest money contract." It is apparent that the clause does not expressly limit or mandate the manner of acceptance. The requirement that both parties sign the addendum refers to incorporation of the written terms of the addendum into the contract by reference, not to acceptance. Moreover, the requirement has been satisfied; the signatures of both parties are present.

Even if the clause could be construed as prescribing an exclusive method of acceptance, such a construction

does not comport with the facts of this dispute. The language of the contract is couched in terms of an offer by the purchaser and acceptance by the seller. The printed form does not provide for the eventuality of a counter-offer by seller. Constructional difficulties arise by virtue of the estate having modified plaintiffs' offer by interlineation rather than by presenting a separate offer to sell. If the agreement were to be construed against any party, it should be construed against defendants. Given, in addition, that plaintiffs had already signed the addendum, that they gave their oral approval to the changes suggested by defendants, that the form made no provision for plaintiffs to sign a second time in the event changes were made, and that defendants at no time requested written assent to the changes, we hold that, despite the presence of the clause in dispute, defendants failed as a matter of law to communicate adequately their intention (if they formed one) to exclude all but written acceptance of their counter-offer.

Because the manner of acceptance was not restricted, any action by plaintiffs amounting to a manifestation of intent to accept defendants' counter-offer would complete the contract. *Snyder v. Pynn,* 50 Or App 449, 623 P2d 1090 (1981). It was not necessary for plaintiffs to sign the addendum a second time; oral acceptance could suffice. *See Alpha Phi of Sigma Kappa v. Kincaid,* 180 Or 568, 178 P2d 156 (1947). Defendants were not entitled to a judgment as a matter of law.

Our result requires further consideration concerning the appropriate disposition of this case. Because it was error to grant the defendants' summary judgment, reversal potentially leads to a trial with attendant delay and expense.

■ This is an action in equity for specific performance. The parties have proceeded on the same legal theory and the same material facts. We are satisfied from our *de novo* review of the record that there is no genuine issue as to any material fact. ORCP 47D. Plaintiffs accepted the counter-offer and as a matter of law a contract was formed. Plaintiffs are entitled to specific performance. The question that remains is whether this court has the power to remand with directions to the trial court to enter summary judgment for

plaintiffs on their motion. The real and salutary function of the summary judgment procedure is to avoid unnecessary trials or a trial of undisputed issues of fact. *See Garrison v. Cook,* 280 Or 205, 209-210, 570 P2d 646 (1977).[4]

■        When cross-motions for summary judgment have been made, and the record is clear that no issue of fact genuinely exists, no reason precludes this court from granting summary judgment for the appellant. *Moore's Federal Practice* adopts this view when discussing cross motions under FRCP 56:

> "Indeed, it is buttressed by the fact that the appellant's motion for summary judgment apprised his adversary, who also moved for summary judgment, that it should be prepared to meet the appellant's position that on the undisputed facts appellant was entitled to judgment as a matter of law. And remand with directions to enter judgment on appellant's cross motion for summary judgment will eliminate further delay and expense. But the appellate court should be quite certain that no further exploration of the facts is in order. Where additional exploration is in order the case should be remanded for further proceedings, which may include a renewed motion by the appellant for summary judgment." 6 Moore's Federal Practices § 56.13 p 56-348.[5]

ORCP 47 and its predecessor, ORS 18.105, are patterned after FRCP 56. *Garrison v. Cook, supra,* 280 Or at 209.

The facts in this case make it clear that plaintiffs accepted the counter-offer and a contract resulted. It is equally clear that the parties fired both barrels and presented all the facts as if the motion hearing was the final hearing. The result is that there are no genuine issues as to

---

[4] This court has recognized the importance of the avoidance of unnecessary litigation in the interest of judicial economy. *See Hanneman v. Jones,* 45 Or App 1005, 1010, 609 P2d 912 (1980), an equity case considering a summary judgment.

[5] Our power to remand for entry of summary judgment for plaintiff is further buttressed by Article VII (A), section 3, of the Oregon Constitution, which states in part:

> "* * * or, if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of the opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court."

any material facts and plaintiffs are entitled, as a matter of law, to specific performance. *Cf. Fountain v. Filson,* 336 US 681, 682-683, 69 S Ct 754, 93 L Ed 971 (1949). On *de novo* review this court has the power to order summary judgment for an appellant, where cross-motions have been filed.

We reverse and remand with instructions to enter summary judgment in favor of plaintiffs together with such further proceedings as are consistent herewith.[6]

Reversed and remanded with instructions.

---

[6] We call specific attention to *Hoy v. Jackson,* 26 Or App 895, 554 P2d 561 (1976), and *All-States Leasing v. Pacific Empire Land Corp.,* 31 Or App 733, 571 P2d 192 (1977), which hold that an order denying a motion for summary judgment is interlocutory and is not a final and appealable order. Our present decision does not disturb that rule.