Argued and submitted May 11, reversed and
remanded with instructions August 8, 1984

# STATE OF OREGON, acting by and through the STATE BOARD OF HIGHER EDUCATION,
*Respondent,*

*v.*

# NORTHWESTERN PACIFIC INDEMNITY COMPANY,
*Appellant.*

(16-81-09284; CA A29101)

685 P2d 1026

Michael A. Lehner, Portland, argued the cause for appellant. With him on the briefs were Andrew K. Chenoweth and Mitchell, Lang & Smith, Portland.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals from a final judgment awarding plaintiff damages entered after the court had granted plaintiff's motion for a partial summary judgment on liability and denied defendant's motion for summary judgment. The parties stipulated to plaintiff's damages.

Plaintiff sued defendant, its insurer, for indemnity under a liability policy. The policy was in effect between October 1, 1973, and October 1, 1975. During that time plaintiff sold "foundation" wheat seed to the Washington State Crop Improvement Association (WSCIA), the official seed certification agency for the state of Washington. Oregon State University (OSU) had developed the "foundation" seed that WSCIA purchased.[1] The seed, however, was not pure, because OSU had negligently produced, cleaned, treated and packaged it.

On September 17, 1975, WSCIA sold the contaminated seed to Washington wheat seed farmers. After the policy period, the farmers planted the seed, harvested the crop and applied to WSCIA to certify the crop as "registered" seed. WSCIA refused, because the seed did not meet purity standards. The farmers sued plaintiff in Washington and obtained a judgment for $163,749.87. Plaintiff satisfied the judgment and brought this action.

The policy provides:

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as *'damages'* because of:

"* * * * *

"* * * Property Damage; to which this policy applies, caused by an occurrence * * *."

The policy defines "occurrence":

"[A]n event, or continuous or repeated exposure to conditions, which causes * * * property damage during the policy period that is neither knowingly nor intentionally caused by or at the direction of the insured."

---

[1] "Breeder" seed, the purest seed variety, is used to grow "foundation" seed, which is planted to produce "registered" seed, which may in turn be planted to produce "certified" seed.

The policy defines "property damage" as "injury to or destruction of tangible property" and recites that:

> "[t]his policy does not apply * * * [t]o injury or damage to or destruction of *any property owned by the State of Oregon or any of its departments, agencies, boards or commissions* * * *."

■ Defendant assigns as errors that the court allowed plaintiff's motion for partial summary judgment and denied its motion for summary judgment. Defendant asserts that, although plaintiff had produced, cleaned, packaged and sold the seed to the Washington farmers before October 1, 1975, there was no "property damage" before that date and, therefore, there was no "occurrence" within the policy period. We agree.

Even if the Washington farmers suffered "property damage" in 1976 when the crop was harvested and WSCIA refused to certify it as "registered" seed, there was not an "occurrence" within the policy period. Contrary to the state's assertion, the phrase "during the policy period" in the definition of "occurrence" modifies "property damage," not "event."[2] Although "property damage" followed from the sale, it did not occur until after the policy period.

■ The state claims that there was property damage during the policy period, measured by the difference in value between uncontaminated foundation seed and the seed that plaintiff sold. We disagree. In *General Ins. v. Western Am. Development,* 43 Or App 671, 603 P2d 1245 (1979), the insurer sought a declaratory judgment that the allegations of the underlying damage complaint against its insured did not impose on the insurer a duty under its policy to defend. The buyers of mobile home lots had sued the insured, alleging that they were induced to purchase lots at a price inflated by the seller's misrepresentations concerning an easement across the lots. The policy imposed a duty to defend claims of "property damage," which the policy defined as physical injury to tangible property or the loss of its use. We ruled that the insurer had no duty to defend, because the plaintiffs in the

---

[2] Defendant also cites *Silver Eagle Co. v. Nat. Union Fire,* 246 Or 398, 423 P2d 944 (1967), to support its argument that, as a matter of law, the policy did not cover claims for damage caused by defective products sold during the policy period if the damage did not occur until after the policy period.

underlying action had not alleged that they had suffered property damage simply by claiming "that the property which they bought was worth less than they expected, and that, in some cases, they had to pay unexpected moving expenses." 43 Or App at 675.[3]

The court erred when it granted plaintiff's motion for partial summary judgment. The court also erred in denying defendant's motion for summary judgment. Because defendant was entitled to prevail as a matter of law, we reverse the judgment for plaintiff and instruct the court to enter judgment for defendant. *See Mortgage Bancorp v. New Hampshire Ins. Co.,* 67 Or App 261, 265, 677 P2d 726, *rev den* 297 Or 339 (1984); *Cochran v. Connell,* 53 Or App 933, 939, 632 P2d 1385, *rev den* 292 Or 109 (1981).

Reversed and remanded with instructions to enter judgment for defendant.

---

[3] The policy excludes liability for "injury to or destruction of property owned by the state of Oregon." The seed was owned by the state at the time of its contamination and mislabeling. Thus, even if contamination and mislabeling of the seed before its sale was "property damage" within the meaning of the policy, it was not covered property damage, because the state owned the seed at that time.