Argued and submitted December 6, 1985, reversed and remanded with instructions
March 12, reconsideration denied June 6, petition for review denied
July 29, 1986 (301 Or 446)

# WILSON,
*Respondent,*

*v.*

# WESTERN ALLIANCE CORPORATION,
*Appellant.*

## (A8212-07359; CA A34489)

715 P2d 1344

Allan M. Muir, Portland, argued the cause for appellant. With him on the brief were Ridgway K. Foley, Jr., P.C., Ruth J. Hooper, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Martha M. Hicks, Portland, argued the cause and submitted the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

■     Plaintiff brings this action for contract damages and specific performance on the basis of an agreement by defendant to pay plaintiff a three percent commission on renewal premiums received by defendant from Ford Motor Credit Corporation. The trial court granted partial summary judgment in favor of plaintiff on the issue of liability, relying on a 1980 judgment which awarded plaintiff damages through July, 1979, for breach of the same contract. The court denied defendant's motion for summary judgment, which asserted that plaintiff was barred by *res judicata* from bringing this second action. Judgment was entered for plaintiff. On appeal, defendant assigns as errors the rulings on the summary judgment motions. We conclude that defendant was entitled to summary judgment and reverse.[1]

Plaintiff was employed as an insurance agent for defendant for a brief period in 1975 and 1976. In January, 1976, defendant wrote plaintiff a letter that said, in part:

> "From [January 15, 1976] forward, we agree to pay you 3% of the net commissions generated to us from the Ford Motor Credit sources which you have brought or will bring to us as sub agent."

After plaintiff left its employ, defendant brought an unfair competition claim against him and his new company, Western Reliance. Plaintiff counterclaimed for unpaid commissions under the agreement formalized by the January, 1976, letter. Details of the relationship between plaintiff and defendant and of that lawsuit are set out in *Western Alliance v. Western Reliance,* 57 Or App 263, 643 P2d 1382 (1982), where we affirmed a judgment for plaintiff.

In the original action the jury necessarily found that defendant had agreed to pay plaintiff a three percent commission on all renewals received from the Ford Motor Credit account, even if plaintiff was no longer employed by defendant. This action is for unpaid commissions under the same contract since July, 1979, and for specific performance of the

---

[1] When the party denied summary judgment was entitled to prevail as a matter of law, we may review the claim of error, if there is an otherwise appealable judgment. *State Bd. of Higher Ed. v. NW Pac. Indemnity Co.,* 69 Or App 456, 685 P2d 1026 (1984); *Cochran v. Connell,* 53 Or App 933, 632 P2d 1385, *rev den* 292 Or 109 (1981).

contract in the future. Defendant argues that, because plaintiff could have sought this same relief in the other action, he is barred by *res judicata* from seeking it now. We agree.

The doctrine of *res judicata* provides that a judgment on a litigated claim extinguishes all claims against the defendant that arise from the same cause of action.[2] The related rule against splitting a cause of action provides that all claims that *could* have been brought in the first action merge in the judgment, regardless of whether the plaintiff actually asserted those claims. *Dean v. Exotic Veneers, supra; Stowell v. RLK and Company,* 66 Or App 567, 571, 572, 675 P2d 1074 (1984). Merger serves the principal purposes of *res judicata*: the "prevention of harassment of defendants by successive legal proceedings" and economy of judicial resources. *Dean v. Exotic Veneers, supra,* 271 Or at 192.

Plaintiff argues that *res judicata* is not a bar to this action because, first, there was no repudiation of the contract. Second, he argues that *res judicata* does not apply because, even if defendant attempted to repudiate, plaintiff did not accept it and therefore there could have been no repudiation. Those arguments are without merit.

A party repudiates an executory contract when it refuses to perform its obligation under the contract "positively, unconditionally, unequivocally, distinctly and absolutely." *Swick v. Mueller,* 193 Or 668, 676, 238 P2d 717 (1952). On October 7, 1977, defendant wrote plaintiff a letter, stating in part:

"I regret that it is necessary for us to terminate our relationship.

"* * * * *

"It is our position that you have breeched [*sic*] both moral and legal responsibilities to us and we therefore advise that this termination is without further obligation to you after September 1, 1977."

That indicates a positive, unconditional, distinct refusal to perform in the future.

The heart of plaintiff's argument is that he did not

---

[2] A "cause of action" is an aggregate of facts entitling a party to some form of relief. *Troutman v. Erlandson,* 287 Or 187, 201, 598 P2d 1211 (1979); *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 193, 531 P2d 266 (1975).

accept defendant's repudiation and that, therefore, the repudiation was a nullity. Because there was no repudiation, he reasons, he may sue from time to time on the continuing obligation.

■       We do not disagree that a repudiation of an executory contract does not operate as a breach until it is treated as a breach by the injured party. *See Furrer v. Int'l Health Assurance,* 256 Or 429, 474 P2d 759 (1970). The rule protects a non-breaching party from imposition, by the repudiating party, of a premature end to the contract. It gives an injured party the option either to "maintain an action at once for the damages occasioned by such anticipatory breach," *Dibble v. Hodes Co.,* 132 Or 596, 606, 277 P 820, 286 P 554 (1930), (which would include future damages) or to wait until performance is due and then sue for damages.

We do not agree, however, that nonacceptance makes the repudiation a nullity. The repudiation has still occurred; it simply does not operate as a breach, triggering a right to sue for future contractual obligations, unless the non-breaching party chooses to accept it as such.

■       The issue in this case, then, is whether, when there is a repudiation of a continuing unilateral obligation, the non-breaching party can maintain serial actions for damages as they accrue. We hold that it may not.

■ ■       The defendant's obligation to pay a percentage of commissions received on insurance renewals was a continuing obligation. The rule against splitting a cause of action does not prevent the bringing of successive actions for successive breaches of the same contract *if the contract is not terminated by a single breach* and if each action is brought after the subject breach but before a subsequent breach. *Stowell v. RLK and Company, supra,* 66 Or App at 572. However, when there has been a repudiation of a contract, the breach gives rise to only one cause of action. *Kulm v. Coast to Coast Stores,* 254 Or 608, 610, 461 P2d 526 (1969); *Stowell v. RLK and Company, supra,* 66 Or App at 572.[3]

---

[3] Restatement (Second) Judgments § 26(1)(e) (1980), indicates that courts have an option whether to allow only one action or several for continuing wrongs:

"For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and

■■ ■■ The public policy of this state encourages disposition in one proceeding of all claims between the parties. *Troutman v. Erlandson, supra,* 287 Or at 205.[4] Plaintiff could have, in his counterclaim against defendant in the first action, sought future damages, as he does here. If the future damages were too uncertain, due to the contingent nature of the insurance renewals, he could have brought an action for specific performance, as he does now, or asked for a declaratory judgment that the contractual obligation was continuing and that defendant was required to perform. Instead, plaintiff sought damages only for unpaid commissions due before the time of trial. He cannot now claim an additional remedy that he could have sought in the previous action. *See Rennie v. Freeway Transport,* 294 Or 319, 656 P2d 919 (1982).

Plaintiff asserts that *Bolte v. Aits,* 60 Hawaii 58, 587

---

prospective, or to sue from time to time for the damages incurred to the date of suit * * *."

This section does not address the question of a repudiation. Plaintiff directs the court's attention to Restatement (Second) Contracts § 243(3) (1979), which states:

"Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by nonperformance as to less than the whole, whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach."

In *Kulm,* the Supreme Court stated that "[w]hen there is a repudiation of a contract or lease the breach should give rise to only one cause of action." 254 Or at 610. The court thereby rejected the reasoning of the Restatement that would allow separate actions for each nonpayment of an installment, following a repudiation. Under the law of Oregon, when a repudiation has occurred, all remedies must be pursued in one action.

Plaintiff's reliance on *Stowell* and *Ind. Leasing v. Roberts Myrtlewood,* 240 Or 577, 401 P2d 698 (1965), is misplaced. In neither case was there a repudiation of the entire contract. *Ind. Leasing* involved nonpayment of rent on a lease. The court said that the plaintiff could bring successive actions for nonpayment so long as the *only* breach was nonpayment. In *Stowell,* both actions were based on the same contract. However, the second action was for a breach, occurring after the first action, of different duties than those sued upon in the prior action. There had been no repudiation, at the outset, of the entire contract. Therefore, the second action was allowed to proceed.

[4] Although the option appears to be foreclosed by *Kulm v. Coast to Coast Stores, supra* n 2, according to Corbin, when a plaintiff has already fully performed his part when the repudiation occurs, courts *may* permit a series of actions against the repudiator for nonperformance, especially when payments are based on a contingency. 4 Corbin, Contracts 832-33, § 954 (1951). However, he also indicates that, when there is a repudiation of a continuing contract, the most satisfactory remedy is a single judgment for money damages. If damages are not capable of accurate estimation, a decree for specific performance may be adequate. Corbin, *supra,* 843-44, § 956.

P2d 810 (1978), cited favorably in *Stowell v. RLK and Company, supra,* is so similar as to be dispositive. The facts, however, differ in one important respect: In *Bolte,* there was no repudiation, but merely a failure to pay insurance commissions as they came due. In that case, the injured party could bring a second action for a breach that occurred after judgment was entered in the first action. The court's reasoning is inapplicable to this case, where defendant had repudiated the entire contract.

When, as in this case, avenues exist that would allow litigation of all claims in one action, a party must bring those claims or be barred by *res judicata* from raising them in subsequent actions.

Reversed and remanded with instructions to enter judgment for defendant.