Argued and submitted December 23, 1998, reversed on appeal; affirmed on
cross-appeal and remanded August 4, 1999

FEDERAL RECOVERY OF WASHINGTON, INC.,
a Washington corporation,
*Respondent - Cross-Appellant,*

*v.*

Gary D. WINGFIELD
and Pat, aka Patrick Wingfield,
dba Wingfield Trucking,
*Appellants - Cross-Respondents.*

(97C-898109; CA A101642)

986 P2d 67

James K. Gardner argued the cause and filed the briefs for appellants - cross-respondents.

Doris J. Brook argued the cause for respondent - cross-appellant. With her on the brief were Pamela E. Yee and Schmidt & Yee.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

This case arises out of plaintiff's acceleration of the balance due on a truck lease following defendants' failure to make an installment payment. On cross-motions for summary judgment, the trial court granted plaintiff's motion for summary judgment in part and defendants' motion for summary judgment in part, concluding that (1) plaintiff's claim for the deficiency balance on the lease was barred by a four-year statute of limitations; and (2) plaintiff's claim for the August 1991 monthly installment was subject to a six-year statute of limitations and was, consequently, timely. Defendants appeal, challenging the second determination, and plaintiff cross-appeals, challenging the first. We reverse on the appeal and affirm on the cross-appeal.

On February 14, 1990, defendants Gary and Pat Wingfield leased a 1990 utility flatbed trailer from Industrial Leasing Corporation (ILC) for a 48-month term. The lease provided, in part:

"19. DEFAULT. Lessee shall be in default if:

"(a) Lessee fails to make any payment due under the terms of this Lease.

"* * * * *

"20. REMEDIES. If Lessee is in default, Lessor, WITHOUT NOTICE to Lessee, shall have the right to exercise any one or more of the following remedies, concurrently or separately:

"* * * * *

"(c) Lessor may declare all amounts due under this Lease immediately due and payable * * *."

In accordance with the terms of the lease, defendants made monthly payments of $406.01 until August 1991, when they failed to pay the monthly installment.[1] Following

---

[1] The record demonstrates, and plaintiff agrees, that defendants' first default under the lease actually occurred in July 1991. However, because plaintiff's amended complaint alleged that defendants' first default occurred in August 1991, plaintiff accepts August 1991 as the date of defendants' first missed payment for purposes of this appeal.

that default, defendants did not make any further monthly payments. The parties' attempts at reaching a settlement agreement failed.

On November 6, 1991, ILC sent a letter to defendants stating that it was "accelerat[ing] all of the rent and other obligations due and to become due under the above referenced Lease * * *." Pursuant to the remedies expressly provided for in the lease, ILC then repossessed and sold the trailer and applied the proceeds of the sale to the accelerated balance. Defendants never paid ILC the deficiency balance remaining on the lease.

At the time that defendants defaulted on the August 1991 installment, the statute of limitations governing all actions for breach of contract was ORS 12.080, which provided, in part:

"(1)   An action upon a contract or liability, express or implied, * * *

"* * * * *

*"shall be commenced within six years."* (Emphasis added.)

On September 1, 1991, ORS 72A.5060 became effective. Or Laws 1989, ch 676, §§ 53, 84. That statute provides, in part:

"(1)   An action for default under a lease contract, including breach of warranty or indemnity, *must be commenced within four years after the cause of action accrued."* (Emphasis added.)

In December 1994, plaintiff Federal Recovery of Washington acquired all of ILC's rights, title and interests as lessor under the lease. In May 1997, more than four years after ILC accelerated on the debt, but less then six years after defendants' initial August 1991 nonpayment, plaintiff filed this action for breach of lease to recover the entire deficiency balance of $8,940.23 plus interest.

Defendants filed a pretrial motion for judgment on the pleadings, arguing that plaintiff's claim for breach of lease did not accrue until plaintiff sent the letter of acceleration in November 1991, and was therefore subject to, and barred by, ORS 72A.5060, the four-year statute of limitations. The court denied that motion. Defendants then filed a

motion for summary judgment, again asserting that "the four-year statute of limitations, ORS 72A.5060, bars the plaintiff's claim." Plaintiff filed a cross-motion for summary judgment, contending that plaintiff's cause of action for breach of the lease was governed by ORS 12.080, the six-year statute of limitations, because it accrued upon defendants' nonpayment in August 1991, and was therefore timely. After a hearing, the court issued a letter opinion, concluding "that both statutes of limitations apply to the circumstances of this case." Accordingly, the trial court granted plaintiff's motion in part and defendants' motion in part, reasoning that:

> "A statute of limitations begins to run against each installment from the time when it becomes due. * * * For the purpose of determining accrual of a cause of action in an installment contract, a new cause of action arises *from the date each payment is missed.* * * * Thus, each breach constitutes a separate cause of action. As such, all payments falling after the effective date of ORS 72A.5060 are barred by the statute of limitations. Therefore, this Court grants summary judgment to the defendant as to payments due after September 1, 1991.
>
> "This does not completely cut off recovery for plaintiff, however. * * * [A]ny breach occurring prior to September 1, 1991, but after May 8, 1991 (filing date less six years), falls under the six year statute of limitations of ORS 12.080. As plaintiff only alleged breaches beginning in August of 1991 * * *, this Court grants plaintiff's motion for summary judgment as to the August 1991 payment." (Emphasis in original; citations omitted.)

The court also awarded attorney fees pursuant to the attorney fee provision in the lease.[2]

On appeal, defendants assign error to the trial court's judgment for plaintiff in the amount of $454.21 plus interest and attorney fees to plaintiff. Defendants argue that

---

[2] The lease provided:

"Lessee shall be liable for all costs incurred by Lessor to enforce any provision of this Lease, including, but not limited to taking possession, transportation, storage and disposition of the Equipment. If Lessor engages an attorney to enforce this Lease, or defend any action concerning this Lease, Lessor shall be entitled to reasonable attorney fees, including attorney fees incurred at trial, on appeal and review, or incurred without actions, suits, or proceedings, together with all costs and expenses."

the trial court erred in (1) denying their motion for judgment on the pleadings; (2) denying their motion for summary judgment; (3) denying their motion to reconsider the memorandum opinion; and (4) denying their objection to plaintiff's award of attorney fees. On cross-appeal, plaintiff assigns error to the trial court's grant of defendants' motion for summary judgment barring plaintiff's claim for the deficiency balance of the lease. Plaintiff also assigns error to the trial court's denial of the full amount of plaintiff's request for attorney fees.

■    For the sake of analytical clarity, we first address the principal issue on the cross-appeal: Did the trial court err in concluding that plaintiff's cause of action for the deficiency balance on the lease was governed, and barred, by the four-year limitation period of ORS 72A.5060, which became effective after defendants failed to pay the August 1991 installment but before plaintiff gave notice of acceleration in November 1991? Because the parties agree that there are no issues of fact to be resolved, we review the trial court's grant of summary judgment to determine whether defendants were entitled to summary judgment as a matter of law. ORCP 47 C; *Prestige Home Real Estate Co. v. Hanson*, 151 Or App 756, 759, 951 P2d 193 (1997).

■    Unless otherwise provided by statute, a limitation period begins to run from the time a cause of action accrues. *Allen v. Lawrence*, 137 Or App 181, 186, 903 P2d 919 (1995), *rev den* 322 Or 644 (1996). The parties agree that the statute of limitations applicable to plaintiff's claim is that which was in effect at the time that plaintiff's cause of action for the deficiency balance accrued.[3] Thus, the cross-appeal turns on whether plaintiff's cause of action for the deficiency balance due on the lease accrued before or after ORS 72A.5060 became effective on September 1, 1991.

Plaintiff argues that its cause of action for the entire balance accrued upon defendants' initial default on the

---

[3] It is undisputed that a newly enacted statute that shortens a limitation period may not be applied retroactively to bar a claim that could have been timely brought within the previously applicable limitation period. *Wolf v. Goin*, 26 Or App 23, 28, 552 P2d 258 (1976).

August 1991 monthly payment. The gist of plaintiff's argument is that, under the terms of the lease, nonpayment of a single monthly installment was a default giving rise to a cause of action for the deficiency balance of the lease—regardless of when, or even whether, plaintiff exercised the acceleration clause. Defendants respond that plaintiff's cause of action for the deficiency balance did not accrue until plaintiff sent defendants the acceleration letter in November 1991. We agree with defendants.

■■ Plaintiff's premise that "a cause of action for the balance owing on the lease accrued when defendants failed to make their August 1991 payment" flows from a fundamental misunderstanding of the nature and effect of a party's failure to pay one installment of an installment contract. To be sure, a party's failure to make an installment payment as promised is a breach of contract, and a cause of action for recovery *of that particular installment* accrues immediately. *See* Arthur L. Corbin, 3A *Corbin on Contracts* § 687 (1951). However, absent an explicit contractual provision or some special circumstance, a party's mere nonpayment of one installment is not a "total breach" and, consequently, does not give rise to a cause of action for the entire amount of the contract. *Id.; see, e.g., Ind. Leasing v. Roberts Myrtlewood*, 240 Or 577, 580, 401 P2d 698 (1965) (a lessee's default on one payment of an office equipment lease did not cause the entire balance to become due and payable where the lessee's conduct did not show a "positive, definite, absolute, unconditional and unequivocal intent not to perform in any event," *i.e.*, a "total anticipatory breach").

■ Contracting parties may include express terms in a contract or lease making payment of each installment "of the essence." *See* Corbin, 3A *Corbin on Contracts* § 690 at 262. Such provisions are commonly referred to as either automatic or optional acceleration clauses, depending on the language of the provision. Automatic and optional acceleration clauses operate differently: "Where the debt is payable in installments and the instrument contains an automatic acceleration clause, the debt is fully matured and the statute of limitations begins running when the debtor first defaults." 54 CJS 201, *Limitations of Actions* § 153 (1987). "[W]here an

instrument gives the creditor an election to accelerate maturity of the debt and it is accelerated, the statute of limitations begins to run from the time of the election to accelerate * * *." *Id.*

In *Buckman v. Hill Military Academy*, 182 Or 621, 630, 189 P2d 575 (1948), relied on by both the trial court and defendants, the Supreme Court explained those basic principles in the context of a note payable in installments:

> "[T]he note was made payable in installments, and the rule is that the statute of limitations runs against each installment from the time when it becomes due. * * * The acceleration clause in the note was not self-executing. It could be called into play only at the option of the holder, and such option was not exercised. Mere nonpayment of any installment of principal or interest, therefore, did not have the effect of causing the whole obligation to mature." (Citations omitted.)

The principles applied in *Buckman* are controlling here. Defendants' August 1991 default on a single monthly installment of the lease did not cause plaintiff's action for the balance of the lease to accrue because defendants' default did not constitute a total breach and the lease did not contain an automatic acceleration clause.[4] Rather, the clause in the lease expressly provided that upon default by lessee, "Lessor *may* declare all amounts" immediately due and payable. (Emphasis added.) Plaintiff did not exercise its option to accelerate on the balance of the lease until November 1991, and, consequently, its cause of action for the balance of the lease did not accrue until that time.[5] Thus, plaintiff's May

---

[1] Williston suggests a contrary view: "But when the election [to accelerate] is manifested, the Statute will run from the date of the default on which the election is based, not from the date of the election itself." 18 *Williston on Contracts* § 2027 (3d ed 1978). That approach creates a species of "inchoate" or "conditional" accrual—that is, a cause of action accrues at an earlier time only if a subsequent event (exercise of acceleration) occurs. So far as we know, no Oregon court has, in any context, endorsed such an indefinite notion of *ex post facto* accrual, and we decline to do so. Williston offers no principled or practical advantage of that approach over the one that we endorse—which comports with *Buckman*—and we perceive none.

[5] Plaintiff contends that, because the lease defined any nonpayment as a "default," the balance automatically accelerated upon defendants' nonpayment. That argument is unavailing. The lease does identify nonpayment of an

1997 claim for the accelerated balance, which was filed more than four years after plaintiff's cause of action for the balance accrued, was barred by ORS 72A.5060. The trial court did not err in so holding.

■ We turn to defendants' appeal. The thrust of that appeal is that the trial court erred in entering judgment for plaintiff for the amount of the unpaid August 1991 installment in that plaintiff never pleaded a claim seeking such relief. We agree.

Plaintiff's amended complaint pleaded a single claim for relief, alleging a material breach of the lease. That claim alleged an entitlement to recover the entire contract balance, including, without differentiation, the amount of the unpaid installments. Plaintiff did not plead an alternative claim to recover the amount of the August 1991 installment only, in the event that its claim for the accelerated balance was time-barred.[6] Consequently, because plaintiff's only claim was barred by the statute of limitations, plaintiff was not entitled

---

installment as a "default," but it also expressly provides that the lessor has the *option* of accelerating on the balance when the lessee is in default. That provision would be superfluous if acceleration were automatic upon nonpayment of an installment.

[6] We express no view as to whether such an *alternative* claim, based on an *antecedent* nonmaterial breach of the contract, could properly be pleaded in the same action that asserts a subsequent material breach. *See generally Kulm v. Coast to Coast Stores*, 254 Or 608, 610, 461 P2d 526 (1969) (addressing prohibition against prosecution of multiple actions for material breaches of the same contract: "When there is a repudiation of a contract or lease the breach should give rise to only one cause of action. The fact that provision is made for the payment of the rent in installments is not in itself any reason for treating the failure to pay each installment as giving rise to a separate cause of action when there is a repudiation of the lease."); *Wilson v. Western Alliance Corp.*, 78 Or App 197, 201, 715 P2d 1344, *rev den* 301 Or 446 (1986) ("The rule against splitting a cause of action does not prevent the bringing of successive actions for successive breaches of the same contract *if the contract is not terminated by a single breach* and if each action is brought after the subject breach but before a subsequent breach. * * * * However, when there has been a repudiation of a contract, the breach gives rise to only one cause of action.") (emphasis in original); *Id.* at 201-02 n 3 ("Under the law of Oregon, when a repudiation has occurred, all remedies must be pursued in one action."); *Stowell v. R.L.K. and Company*, 66 Or App 567, 572, 675 P2d 1074 (1984) ("[I]f at the time an action commenced for a specific breach of a separable and divisible contract, there exist other breaches of that contract which are not so independent of each other as to constitute separate and distinct causes of action, they are all parts of one indivisible demand and must be included in the action or be barred.").

In this case, that question is academic. Regardless of the viability of such an alternative claim, none was pleaded here.

to recover partial alternative relief. The trial court thus erred in awarding plaintiff judgment for the August 1991 installment and attorney fees under the lease.[7]

Reversed on appeal; affirmed on cross-appeal and remanded for entry of judgment for defendant.

---

[7] Our conclusion in that regard obviates plaintiff's contention on cross-appeal that the trial court's award of attorney fees was inadequate.