PATRICIA ANN BLACKMON, J.:
*387 {¶1} In this interlocutory appeal, defendants-appellants, Hyster-Yale Group, Inc., and its parent company, Hyster-Yale Materials Handling Corporation (collectively referred to as "Hyster-Yale"), appeal from the order of the trial court determining that plaintiff-appellee, Fireman's Fund Ins. Co. ("Fireman's Fund"), may withdraw its defense of Hyster-Yale in asbestos lawsuits where there is indisputable, reliable evidence that the date of injury clearly occurred outside of the policy term (i.e., 1957 to 1969). Hyster-Yale assigns the following three errors for our review:
I. The trial court erred in holding that Ohio law permits [Fireman's Fund] to terminate its duty to defend based on information extrinsic to the operative complaints developed during the course of the underlying asbestos lawsuits.
II. The trial court erred in holding that Oregon law permits [Fireman's Fund] to terminate its duty to defend based on information extrinsic to the operative complaints developed during the course of the underlying asbestos lawsuits.
III. To the extent Oregon and Ohio law conflict with respect to the standard governing an insurer's duty to defend, Oregon law has the most significant relationship to the policies and its law must therefore apply.
{¶2} Having reviewed the record and pertinent law, we affirm the judgment of the trial court granting partial summary judgment to Fireman's Fund and denying Hyster-Yale's motion for summary judgment. The apposite facts follow.
{¶3} Hyster-Yale Group is a national subsidiary of Hyster-Yale Materials Handling, a Delaware company. At all relevant times, Hyster-Yale manufactured "powered industrial trucks," or forklifts. Fireman's Fund is one of Hyster-Yale's insurers, and it issued various general liability policies with policy periods from February 1, 1957, through February 1, 1969. During this time period, Hyster-Yale was headquartered in Oregon, and the policies were negotiated with an Oregon broker.
{¶4} In relevant part, the Fireman's Fund policies state:
I. Coverage Bodily Injury Liability Automobile:
* * *
*388 Coverage Bodily Injury Liability Except Automobiles: to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person and caused by accident;[1 ]
* * *
II. Defense Settlement Supplementary Payments: with respect to such insurance as is afforded by this policy, the company shall:
(a) Defend any suit against the insured alleging such injury, sickness, disease or destruction in seeking damages on account thereof, even if such suit is groundless, false or fraudulent ; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;
IV. Policy Period, Territory, Purposes of Use: this policy applies only to accidents which occurred during the policy period within the United States of America, its territories or possessions[.]
(Emphasis added.)
{¶5} The policies were not limited to the Oregon area, and by 1990, Hyster-Yale moved its headquarters to Ohio.
{¶6} Some of the component parts of Hyster-Yale's products are alleged to contain asbestos, and Hyster-Yale is a defendant in various asbestos-injury actions, including claims filed by Robert Chamberland ("Chamberland") in California, Ruben Groskreutz ("Groskreutz") in Illinois, and Raymond Parker ("Parker") in Michigan. Hyster-Yale sought defense and indemnity from Fireman's Fund in connection with the policies in effect during the relevant time periods. Fireman's Fund defended the cases. However, by 2015, it gave notice that it was withdrawing from the defense of the Chamberland, Groskreutz, and Parker claims. Fireman's Fund maintained that it learned through discovery that the plaintiffs' exposure to Hyster-Yale products occurred after the 1958-1969 policy periods. It maintained that Chamberland's asbestos exposure to Hyster-Yale forklifts began "no earlier than July 1978," or nine years past the 1969 policy period, Groskreutz's asbestos exposure began "[i]n the early 1990s," and Parker's exposure began in 1974. However, the record suggests that Fireman's Fund subsequently recommended funding a portion of the defense of these lawsuits under a reservation of rights.
{¶7} Following these disputes, Fireman's Fund filed this declaratory judgment action against Hyster-Yale and its other insurers, Great American Insurance Company, and Travelers Indemnity Company. Fireman's Fund sought declarations: (1) that it has no duty to defend Hyster-Yale in asbestos lawsuits when there is "compelling evidence" that the plaintiff was not exposed to Hyster-Yale's products during the time periods of the Fireman's Fund insurance policies; (2) allocating defense costs in those asbestos lawsuits where the plaintiff's asbestos exposure occurred only during a portion of the duration of the Fireman's Fund insurance policies; and (3) allocating equitable contribution from other insurers. In opposition, Hyster-Yale maintained that the defense obligation applies even if the allegations of the plaintiff's complaint are "groundless, false, or fraudulent." It sought a declaration that Fireman's Fund has a duty to defend, and it also filed *389 counterclaims for breach of contract and breach of duty of good faith.
{¶8} Fireman's Fund filed a motion for partial summary judgment, arguing that Ohio law applies, but that under both Ohio law and Oregon law, there is no duty to defend where extrinsic evidence shows that alleged exposure occurred outside of the policy time periods. In opposition, Hyster-Yale argued that Oregon law applies to the dispute because the insurance was obtained in Oregon, and Hyster-Yale was headquartered in Oregon during the period that the policies were in effect. Hyster-Yale also argued that extrinsic evidence cannot be considered in determining the duty to defend, and that this issue is governed solely by the allegations of the complaint and the policy language requiring Fireman's Fund to provide a defense "even if such suit is groundless, false or fraudulent."
{¶9} The trial court held a hearing on the motion. Thereafter, on February 12, 2018, the trial court granted Fireman's Fund's motion for partial summary judgment on the duty to defend, stating:
[T]he law of both [Ohio and Oregon provides] that (1) an insurer's duty to defend will attach if the allegations in the underlying complaint fall under the policy coverage and that (2) court in certain, limited circumstances may look to extrinsic evidence outside of the complaint. As result, the Court need not engage in choice of law analysis and shall apply Ohio law.
II. Contractual Interpretation
[T]he policy applies only to accidents which occurred during the policy period. * * * [I]f exposure to asbestos in groundless, false or fraudulent suits temporally occurred in actuality between February 1, 1957 to February 1, 1969, then insurance coverage has been triggered and there is duty to defend. It logically follows in the alternative that if exposure to asbestos in groundless, false or fraudulent suits did not temporally occur in actuality between February 1, 1957 to February 1, 1969, then no insurance coverage has been triggered and thus there is no duty to defend. * * *
III. Duty to Defend
[I]t is proper to look at extrinsic evidence after duty to defend has attached to determine whether that duty may be terminated when indisputable, reliable evidence establishes that insurance coverage has not been contractually triggered under policy effective time period. * * *
[T]he Court accordingly declares that [Fireman's Fund] has the right to withdraw its duty to defend [Hyster-Yale] in asbestos lawsuits in cases in which there is indisputable, reliable evidence via sworn affidavit or sworn testimony that the date of an underlying asbestos injury clearly occurred outside of Plaintiffs['] effective policy term between February of 1, 1957 to February 1, 1969[.]
Duty to Defend
{¶10} Hyster-Yale's three assigned errors are interrelated and assert that this dispute is governed by Oregon law, not Ohio law, and that the duty to defend may not be terminated by application of extrinsic evidence obtained during discovery. Rather, the duty is determined solely with reference to the policy language and the allegations of the injury plaintiff's complaint. Because the policies require Fireman's Fund to defend even "groundless, false, and fraudulent" claims, and the complaints allege liability against Hyster-Yale, the duty to defend is "absolute." Therefore, according to Hyster-Yale, the duty continues until the asbestos plaintiffs amend their complaints, or there are judicial *390 determinations of the actual dates of asbestos exposure due to Hyster-Yale. In opposition, Fireman's Fund maintains that Hyster-Yale invited any error on the application of Ohio law to this dispute. It further argues that the trial court correctly applied Ohio law, but under the law of both Oregon and Ohio, the duty to defend may be terminated, following a declaratory judgment action, where extrinsic facts show that a claim is not within policy coverage.
Summary Judgment
{¶11} This court reviews a trial court's grant of summary judgment under the de novo standard. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Pursuant to Civ.R. 56(C), summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. , 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus; Zivich v. Mentor Soccer Club , 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt , 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.
Does Ohio Law Conflict With Oregon Law?
{¶12} Before engaging in any choice-of-law analysis, a court must first determine whether such analysis is necessary. McDonald v. Williamson , 8th Dist. Cuyahoga. No. 81590, 2003-Ohio-6606, 2003 WL 22922271, ¶ 7, citing Akro-Plastics v. Drake Indus. , 115 Ohio App.3d 221, 224, 685 N.E.2d 246 (11th Dist. 1996). If the competing states would use the same rule of law or would otherwise reach the same result, there is no need to make a choice-of-law determination. Id. However, if Ohio insurance law conflicts with that of another state, a court must engage in a choice-of-law analysis. See Glidden Co. v. Lumbermens Mut. Cas. Co. , 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, paragraph one of the syllabus.
Ohio Law
{¶13} In Ohio, an insurance company's duty to defend may arise from the face of a complaint if the allegations contained therein "unequivocally bring the action within the policy coverage." Willoughby Hills v. Cincinnati Ins. Co. , 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984). If the allegations on the face of the complaint state a claim arguably or potentially within the policy's coverage, then the insurer must accept the defense. See Sanderson v. Ohio Edison Co. , 69 Ohio St.3d 582, 589, 635 N.E.2d 19 (1994), paragraph one of the syllabus; Bay Mfg. Co. v. Cincinnati Ins. Co. , 6th Dist. Erie No. E-92-22, 1993 WL 24670 (Feb. 5, 1993). The obligation to defend continues only until the claim is confined to a theory of recovery not covered by the policy. Ins. Co. of N. Am. v. Travelers Ins. Co. , 118 Ohio App.3d 302, 313, 692 N.E.2d 1028 (8th Dist. 1997), citing Great Am. Ins. Co. v. Hartford Ins. Co. , 85 Ohio App.3d 815, 818, 621 N.E.2d 796 (8th Dist. 1993). An insurer need not defend any action or any claim within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage. Sharonville v. Am. Emps. Ins. Co. , 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. The duty to defend is further heightened when the insurer expressly states that it will defend *391 claims that are groundless, false, or fraudulent. Id. , citing Wedge Prods., Inc. v. Hartford Equity Sales Co. , 31 Ohio St.3d 65, 67-68, 509 N.E.2d 74 (1987), and Preferred Risk Ins. Co. v. Gill , 30 Ohio St.3d 108, 114, 507 N.E.2d 1118 (1987).
{¶14} In Preferred Risk , the court held that when an insured promises only to defend those claims to which policy coverage applies, the applicability of the duty to defend does not arise solely from the face of the complaint, but must be determined based on the "true facts" underlying the complaint. Id. at 114, 507 N.E.2d 1118 and paragraph two of the syllabus. The court explained:
Where the insurer represents to its insured that it will undertake the defense of any claim asserting injury within coverage, even where the claim is false or fraudulent, the duty to defend may arise solely from the allegations of the underlying complaint, regardless of the true facts as they are known to the insurer . However, since the appellee herein has promised only to defend claims for bodily injury or property damage "to which this coverage applies," the true facts are determinative of the duty to defend. Where the true facts are such that the insured's conduct was outside the coverage of the policy, the claim is not one "to which this coverage applies," and the insurer has no obligation to defend the insured.
(Emphasis added.) Id. at 114, 507 N.E.2d 1118. See also Mumford v. Interplast, Inc. , 119 Ohio App.3d 724, 735, 696 N.E.2d 259 (2d Dist. 1997).
{¶15} However, "even where an insurer has agreed to defend the insured against groundless, false, or fraudulent claims, the insurer does not have a duty to defend against claims that are clearly outside the scope of coverage under the insurance contract." Westfield Natl. Ins. Co. v. Safe Auto Ins. Co. , 10th Dist. Franklin No. 06AP-739, 2007-Ohio-2469, 2007 WL 1470476, ¶ 14, citing Karder Machine Co. v. Liberty Mut. Ins. Co. , 9th Dist. Summit No. 14486, 1990 Ohio App. LEXIS 4944, 1990 WL 177199, (Nov. 7, 1990) ; Wedge Prods., Inc. at 68, 509 N.E.2d 74. See also State Farm Fire & Cas. Co. v. Condon , 163 Ohio App.3d 584, 2005-Ohio-5208, 839 N.E.2d 464, ¶ 27 (1st Dist.).
{¶16} In this matter, Fireman's Fund agreed to "[d]efend any suit against the insured alleging such injury * * *, even if such suit is groundless, false or fraudulent ; but the company may make such investigation, negotiation and settlement of any claim or suit[.]" (Emphasis added.) In addition, the policies were plainly "occurrence policies" limited to occurrences "during the policy period[.]" See Mueller v. Taylor Rental Ctr. , 106 Ohio App.3d 806, 810, 667 N.E.2d 427 (8th Dist. 1995) (distinguishing "occurrence policies" and "claims policies"). Therefore, although Fireman's Fund agreed to defend even groundless, false, or fraudulent claims, it nonetheless has no duty to defend against claims that are clearly outside the scope of coverage under the insurance contract. As concisely explained by the trial court, the duty to defend cannot be "extended without limitation because the clear terms of the policy dictate finite timeframe [sic] in which the insurance coverage may be triggered."
{¶17} Hyster-Yale notes that in an analogous matter, Panzica Constr. Co. v. Ohio Cas. Ins. Co. , 8th Dist. Cuyahoga No. 69444, 1996 WL 257470 (May 16, 1996), this court rejected an insurer's claim that it had no duty to defend because prior court proceedings established a date of "occurrence" that was prior to its insurance policy. However, Panzica rejected the prior date as "the law of the case," and the court did not discuss the use of "extrinsic *392 evidence" on this issue. Moreover, Panzica dealt primarily with the issue of whether policy exclusions were in effect, and although the insurer additionally maintained that the claim accrued before "the 1975-1976 policies," this court noted that various versions of the policy were in effect "from the early 1970s." Additionally, in Reynolds v. Celina Mut. Ins. Co. , 9th Dist. Lorain No. 98CA007268, 2000 WL 202107 (Feb. 16, 2000), the court concluded that Panzica was not applicable to matters involving occurrence-based policies (such as the instant case) that limit coverage to occurrences within the policy period. See also C.V. Perry & Co. v. W. Jefferson , 110 Ohio App.3d 23, 26, 673 N.E.2d 613 (12th Dist. 1996).
{¶18} In accordance with the foregoing, we hold that the trial court properly concluded that Ohio law permits Fireman's Fund to withdraw its duty to defend Hyster-Yale in asbestos lawsuits in cases in which there is indisputable, reliable evidence that the date of an underlying asbestos injury clearly occurred outside of the effective policy term.
{¶19} The first assigned error lacks merit.
Oregon Law
{¶20} In West Hills Dev. Co. v. Chartis Claims , 360 Or. 650, 385 P.3d 1053 (2016), the Oregon Supreme Court set forth the law regarding an insurer's duty to defend as follows:
An insurer's duty to defend, according to the widely accepted "four-corners" rule, is determined by comparing the complaint to the insurance policy. The rule refers to the four corners of the complaint; it also sometimes is referred to as the eight-corners rule (for the four corners of the complaint plus the four corners of the policy). However denominated, under that rule, one compares the allegations in the complaint to the insurance policy's terms. If the allegations in the complaint assert a claim covered by the policy, then the insurer has a duty to defend. If the allegations do not assert a claim covered by the policy, then the insurer has no duty to defend. By limiting the analysis to the complaint and the insurance policy, the four-corners rule generally prevents consideration of extrinsic evidence .
(Emphasis added and citations omitted.) Id. at 653, 385 P.3d 1053.
{¶21} However, Oregon law permits the introduction of extrinsic evidence to determine whether one is an insured within the meaning of the policy. See Fred Shearer & Sons, Inc. v. Gemini Ins. Co. , 237 Or. App. 468, 485, 240 P.3d 67 (2010) ; PIH Beaverton L.L.C. v. Red Shield Ins. Co. , 289 Or. App. 788, 799, 412 P.3d 234 (2018). Additionally, Oregon law permits an insurer to present evidence that there is no duty to defend claims for harms that did not occur within the policy period. Higher Ed. v. NW Pac. Indemn. Co., 69 Or. App. 456, 685 P.2d 1026 (1984).
{¶22} In accordance with the foregoing, we conclude that the trial court properly concluded that laws of Ohio and Oregon provide that "(1) an insurer's duty to defend will attach if the allegations in the underlying complaint fall under the policy coverage, and that (2) the court in certain, limited circumstances may look to extrinsic evidence outside of the complaint."
{¶23} The second assigned error lacks merit.
Choice of Law
{¶24} In its third assigned error, Hyster-Yale argues that the trial court erred in applying Ohio law, rather than Oregon law. Hyster-Yale notes that the insurance contracts were negotiated and *393 obtained in Oregon, the location for Hyster-Yale's headquarters during the policy periods. In opposition, Fireman's Fund argues that Ohio is the present location of Hyster-Yale's headquarters. Fireman's Fund also asserts that any error on this issue was invited and not reversible because Hyster-Yale repeatedly stated that Ohio law and Oregon law are not in conflict.
{¶25} As we have concluded that the competing states would use the same rule of law permitting the use of extrinsic evidence to determine whether the party seeking coverage was actually an insured within the meaning of the policy, there is no need to make a choice-of-law determination because there is not conflict of law. McDonald , 2003-Ohio-6606, at ¶ 7 ; Akro-Plastics , 115 Ohio App.3d at 224, 685 N.E.2d 246. Therefore, the third assigned error is not well taken.
{¶26} Judgment is affirmed.
TIM McCORMACK, P.J., and MELODY J. STEWART, J., CONCUR

Fireman's Fund subsequently issued endorsements substituting the term "occurrence" for "accident," but the parties agree that this change is not material to the instant dispute.